1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11          SAN JOSE DIVISION

12

| | |
|---|---|
| DAVID ELIAS, individually and on behalf of all others similarly situated and general public, ) ) ) | Case No.: 12-CV-00421-LHK |
| Plaintiff, ) ) | ORDER GRANTING MOTION TO DISMISS |
| v. ) ) | |
| HEWLETT-PACKARD COMPANY, et al., ) ) | |
| Defendants. ) ) | |

Plaintiff David Elias ("Plaintiff" or "Elias") brings this putative class action against Hewlett-Packard Co. and Does 1 through 50 ("Defendants" or "HP") alleging: (1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq.*; (3) fraud; (4) breach of express warranty pursuant to California Commercial Code §§ 2100, *et seq.*; (5) violation of the Song-Beverly Consumer Warranty Act, Civil Code §§ 1790, *et seq.*; and (6) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.* Having considered the submissions of the parties and the relevant law, the Court hereby GRANTS Defendants' Motion To Dismiss without prejudice.

28

1

## I.     BACKGROUND

### A.  Factual Allegations

Plaintiff, on behalf of himself and those similarly situated, brings suit against Defendants for allegedly selling computers with inadequate power supplies.  First Am. Compl. ("FAC") ¶ 1, ECF No. 1-3.  Defendants offer two lines of desktop computers which are at issue here, known as the HP Pavilion Slimline series ("Slimline") and the HP Pavilion series ("Pavilion").  FAC ¶ 17. Customers are able to customize numerous components of these computers, including the operating system, RAM or hard drive memory, graphics cards, monitor, speakers, or software.  FAC ¶ 18. The computers are also equipped with a power supply unit that is not customizable.  FAC ¶¶ 19-20. All Slimline computers are shipped with a 220-watt power supply unit, and most Pavilion computers are shipped with a 300-watt power supply unit.  FAC ¶ 19.

Among the customizable options, HP offers a number of graphics cards for which the manufacturers recommend a minimum power supply of 300 or 400 watts.  FAC ¶ 22.  HP does not disclose when a particular computer is configured such that the minimum recommended power supply for the graphics card exceeds the power supply of the computer, nor does it prevent a customer from buying such a computer.  FAC ¶ 23.  When the computers are configured as such, Plaintiff alleges that they "may fail to boot, freeze, randomly restart, and generally underperform. They also may experience hardware and software failure, overheat, crash, and can even catch fire, resulting in permanent damage and a complete loss of the computer."  FAC ¶ 26.

HP provides written product warranties, which state, "in similar or identical terms," that "the HP Hardware Products that you have purchased or leased from HP are free from defects in materials or workmanship under normal use."  FAC ¶ 77.  HP's website also makes several statements which, according to Plaintiff, "affirmatively market and advertise that their Slimline and Pavilion computers have sufficient power to operate the touted components."  FAC ¶ 24.  For example, the website states that the Pavilion computers provide "[u]ltra-reliable performance delivered in a classic desktop PC," and that the Slimline computers "deliver full power and performance without a towering presence."  FAC ¶ 24.  Plaintiff further alleges that HP "is well

United States District Court

aware of the need for an adequate power supply," referencing a page on HP's website entitled "Troubleshooting Power Supply Issues" and an online forum hosted by HP in which customers discuss issues with power supplies.  FAC ¶¶ 27-28.

Plaintiff purchased a Slimline computer with a 220-watt power supply on or about June 10, 2010, and opted to include a graphics card for which the manufacturer recommended a minimum 300-watt power supply.  FAC ¶¶ 29-31.  His computer malfunctioned in November of 2011, and the computer's motherboard was damaged beyond repair.  FAC ¶ 32.  Plaintiff contacted Defendants for assistance, but they "would not replace the computer or even agree to repair it."  *Id.*

### B. Procedural History

Plaintiff filed a putative class action complaint against Defendants in the Superior Court of California for the County of Santa Clara on December 9, 2011, ECF No. 1-2, and subsequently filed his first amended complaint ("FAC") on December 22, 2011.  *See* ECF No. 1-3.  The complaint was filed on behalf of any person who, between December 7, 2007, and the present, "purchased, in the United States, an HP computer with an included power supply unit having a rated capacity lower than (1) the total combined wattage of all internal PC components and peripherals or (2) the capacity recommended by the manufacturer of any included component or peripheral."  FAC ¶ 33.  Plaintiff's complaint alleges six causes of action: (1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq.*; (3) fraud; (4) breach of express warranty pursuant to California Commercial Code §§ 2100, *et seq.*; (5) violation of the Song-Beverly Consumer Warranty Act, Civil Code §§ 1790, *et seq.*; and (6) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*

Defendants removed the case to this Court on January 26, 2012.  ECF No. 1.  HP then filed a motion to dismiss Plaintiff's FAC based on Federal Rules of Civil Procedure 12(b)(6) and 9(b). Mot. to Dismiss Pl.'s FAC ("Mot."), ECF No. 11.  Plaintiff filed a response to the motion, *see* Pl.'s

3

1   Opp. to Defs.' Mot. to Dismiss FAC ("Opp'n"), ECF No. 19, to which Defendants filed a reply, *see*

2   Defs.' Reply Supp. Mot. to Dismiss P1.'s FAC ("Reply"), ECF No. 20.

3   **II.      LEGAL STANDARDS**

4       **A.  Rule 12(b)(6)**

5         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

6   action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

7   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

8   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9   defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

10  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

11  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).   For purposes

12  of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as

13  true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*

14  *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

15        Nonetheless, the Court need not accept as true allegations contradicted by judicially

16  noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

17  record" without converting the Rule 12(b)(6) motion into one for summary judgment.  *Shaw v.*

18  *Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *see Van Buskirk v. Cable News Network, Inc.*, 284

19  F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Nor is

20  the Court required to "'assume the truth of legal conclusions merely because they are cast in the

21  form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)

22  (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory

23  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

24  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

25  Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish

26  that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

27  1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

28

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

**United States District Court**

### B.  Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Courts in the Ninth Circuit have held that claims for both fraud and negligent misrepresentation are subject to Rule 9(b).  *See Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).  To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam).  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Decker v. Glenfed, Inc. (In re Glenfed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

### C.  Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

5

United States District Court

amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

## III.    DISCUSSION

### A.  Breach of Warranty Claims

Plaintiff's fourth and fifth causes of action both assert that Defendants breached a warranty by selling the computers at issue.  Plaintiff's fourth cause of action alleges that HP breached its express, written warranty pursuant to California Commercial Code §§ 2100, *et seq.*  *See* FAC ¶¶ 74, 79-80.  His fifth cause of action alleges that HP breached its implied warranty of merchantability as provided by the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act").  *See id.* ¶ 88, 92.  As explained below, the Court GRANTS Defendants' Motion to Dismiss both claims.

### 1.  Breach of Express Warranty

Plaintiff's fourth cause of action alleges that HP breached its express warranty by "selling computers with insufficient power supplies."  FAC ¶ 80.  California Commercial Code § 2313 provides that an express warranty is created by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Cal. Com. Code § 2313.  To prevail on a breach of express warranty claim, Plaintiff must prove: (1) "the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks and citation omitted).  Proof of reliance on specific promises is not required.  *Id.*

The parties do not appear to contest that HP's written product warranty is an affirmation of fact or promise, or that it was part of the basis of the bargain.  *See* Mot. at 5-6; Opp'n at 8.  The dispute instead focuses on the fact that the duration of the warranty is limited to one year.

6

*Compare* Mot. at 6, *and* Reply at 2, *with* Opp'n at 8; *see* Mot. Ex. A at 2.[1]  HP argues that the warranty does not cover Plaintiff's computer malfunction because it occurred seventeen months after he purchased it, while Plaintiff maintains that he can retain a cause of action for breach of express warranty by alleging that the malfunction was caused by an inherent defect that was present before the warranty expired.

California has adopted a general rule, following *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006), that "an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (quoting *Daugherty*, 144 Cal. App. 4th at 830).  In *Daugherty*, the California Court of Appeal affirmed the dismissal of a class action lawsuit that alleged that an engine defect could cause over time "the slippage or dislodgment of the front balancer shaft oil seal," which in turn could eventually cause oil loss that could damage nearby engine parts. *Daugherty*, 144 Cal. App. 4th at 827.  Because the alleged defect's effects manifested over time, most plaintiffs encountered problems only after the mileage on their cars was well over Honda's warranty limit of 36,000 miles.  *Id* .at 828-29.  Adopting the holding of the Second Circuit in *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238 (2d. Cir. 1986), *Daugherty* rejected the proposition that a latent defect, discovered only after an express warranty expires, may form the basis for a valid breach of warranty claim.  *Id.* at 830.  "'[V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty.  All parts will wear out sooner or later and thus have a limited effective life.'"  *Id.* (quoting *Abraham*, 795 F.2d at 250).  Accordingly, the law in California does not consider an express warranty to include malfunctions that occur after the warranty has ended.

---

[1]  Although Plaintiff does not attach the warranty itself to the complaint, the Court considers its contents pursuant to *Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006).  *See id.* at 448 ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted.

*Clemens*, 534 F.3d at 1023.

Plaintiff does not contest that the written warranty expires after one year. Instead, he responds that latent defects may give rise to breach of warranty claims, even if no malfunction occurs during the warranty period, if the defect is "substantially certain" to cause a malfunction some time later in the product's useful life. He relies on *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908 (2001), for this proposition. In *Hicks*, a putative class of homeowners alleged that the concrete foundations of their houses were defective because they were constructed using "Fibermesh" instead of welded wire mesh, causing large cracks in the foundations due to moisture. *Hicks*, 89 Cal. App. 4th at 912. The court in *Hicks* found that a claim of breach of warranty did not require proof that the foundations had already cracked, but only that the products "contain[] an inherent defect which is substantially certain to result in malfunction during the useful life of the product[s]." *Id.* at 918. Plaintiff thus asserts that, even if his computer did not malfunction during the one-year warranty period, he still presents a valid claim of breach of express warranty by alleging that an inherent defect was "substantially certain" to result in that malfunction.

The Court rejects this argument for two reasons. First, it is unclear whether *Hicks* applies to consumer products with limited lifespans such as computers—indeed, multiple district courts have concluded that it does not.[2] *See, e.g.*, *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1099 (S.D. Cal. 2010); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1141 (N.D. Cal. 2010). In *In re Sony*, the court emphasized that *Hicks* dealt with defects in the foundations of a

---

[2] The Court also recognizes that *Hicks* addressed a motion for class certification, not a motion to dismiss. Indeed, the question in *Hicks* was not whether a malfunction must occur within the time period of the warranty, but rather whether malfunction was an element that putative class members must commonly show.

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

home, which "consumers may reasonably expect to last for decades." *In re Sony*, 758 F. Supp. 2d at 1099.  Expectations for consumer goods such as televisions or other electronics, on the other hand, "will be highly subjective and will vary widely." *Id.*  Similarly, the court in *In re Toyota* found that the analysis in *Hicks* "was shaped by the unique nature of the product that was alleged to be defective . . . The court expressly distinguished the product from motor vehicles and tires based on the length of useful life." *In re Toyota*, 754 F. Supp. 2d at 1179.  Thus, applying *Hicks* to consumer goods would "eliminate term limits on warranties, effectively making them perpetual or at least for the 'useful life' of the product." *In re Sony*, 758 F. Supp. 2d at 1099 (internal quotation marks and citation omitted).

Second, even if *Hicks* were applicable to the computers at issue, Plaintiff's complaint does not sufficiently allege an inherent defect that was "substantially certain" to result in malfunction. Plaintiff does not allege any facts regarding the likelihood that the wattage difference between the power supply and the graphics card would lead to malfunction.  Moreover, it is unclear whether the defect was even "inherent," given that Plaintiff opted to include the particular graphics card in his computer.  Accordingly, Defendants' Motion to Dismiss Plaintiff's fourth cause of action is GRANTED.  Because Plaintiff may allege facts to cure this deficiency, the dismissal is granted without prejudice.

### 2.   Song-Beverly Consumer Warranty Act

Plaintiff's fifth cause of action is that HP's sale of the computers at issue violates the Song-Beverly Act, which provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792.  By its terms, the Song-Beverly Act applies only to goods sold in California. *Id.*  To be merchantable, consumer goods must:  "(1) [p]ass without objection in the trade under the contract description[;] (2) [be] fit for the ordinary purposes for which such goods are used[;] (3) [be] adequately contained, packaged, and labeled[; and] (4) [c]onform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a).  The implied warranty "is coextensive in duration with an express warranty

9

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

1    which accompanies the consumer goods," but "in no event shall such implied warranty have a

2    duration of less than 60 days nor more than one year following the sale of new consumer goods to

3    a retail buyer."  Cal. Civ. Code § 1791.1(c).

4            The implied warranty of merchantability does not "impose a general requirement that goods

5    precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of

6    quality."  *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (internal

7    quotation marks and citation omitted).  "The core test of merchantability is fitness for the ordinary

8    purpose for which such goods are used."  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303

9    (2009) (quoting *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007)).  "Such fitness

10   is shown if the product is in safe condition and substantially free of defects. . . ."  *Id.* (internal

11   quotation marks and citations omitted).

12           Defendants argue that the Song-Beverly Act does not apply to Plaintiff because his

13   computer malfunctioned seventeen months after its sale, which is beyond the one-year maximum

14   duration set forth in subsection 1791.1.  Mot. at 7-8.  HP argues further that, because the computer

15   functioned properly until this malfunction, it fulfilled the implied warranty of merchantability for

16   the full one-year duration.  *Id.*

17           Plaintiff responds by relying on *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009),

18   for the proposition that "[t]he implied warranty of merchantability may be breached by a

19   latent defect undiscoverable at the time of sale."  *Id.* at 1304; *but see Marchante v. Sony Corp. of*

20   *Am., Inc.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011) (finding that the ruling in *Mexia* "renders

21   meaningless any durational limits on implied warranties" and therefore "enjoys the limelight as a

22   case 'contrary to established California case law with respect to the duration of the implied

23   warranty of merchantability.'") (citing *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 2591445,

24   at *8 n.6 (N.D. Cal. Aug. 21, 2009); *Larsen v. Nissan N. Am.*, No. A121838, 2009 WL 1766797, at

25   *5 (Cal. Ct. App. June 23, 2009) (unpublished)).

26           To justify its holding in *Mexia*, the California Court of Appeal relied heavily on the case of

27   *Moore v. Hubbard & Johnson Lumber Co.*, 149 Cal. App. 2d 236 (1957), in which the defendant

28

United States District Court

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

sold lumber that was infested with beetles that would eat their way out and leave holes in the wood. The infestation rendered the lumber unusable upon sale, even if the holes did not appear or the beetles were not discovered for some time. *Mexia*, 174 Cal. App. 4th at 1305. The *Mexia* court explained that this defect was latent because it was hidden at the time of sale. "Further, there was evidence that if such a defect were known the lumber would be discarded as not being [of the quality described in the sales contract]. In such a case the lumber would be *unusable* and *unsalable* [and therefore unmerchantable].").  *Id.* (discussing *Moore,* 149 Cal. App. 2d at 241) (emphasis in original).

Here, Plaintiff does not appear to allege that the computers at issue failed to work properly from the outset. Instead, Plaintiff alleges that his computer's issues arose only after seventeen months of use, well outside the one-year period established by the Song-Beverly Act. *See* FAC ¶ 32; *cf. Marchante*, 801 F. Supp. 2d at 1021 (finding *Mexia*'s reasoning inapplicable in a case involving breach of implied warranty where Plaintiffs—all television buyers—did not allege that their televisions failed to work properly from the outset, only that issues with overheating, melting, and combusting arose after several years of use). Plaintiff further alleges that, as a result of being underpowered, the computers may "fail to boot, freeze, randomly restart, and generally underperform. They will also experience hardware and software failure, overheat, crash, and can even catch fire, resulting in permanent damage to the computer." FAC ¶ 92. Plaintiff does not plausibly suggest, however, that these potential problems are significant or common enough to render the computers unmerchantable. Indeed, with the exception of catching fire, all of these consequences are regular occurrences when troubleshooting computers. Therefore, it is not clear from the complaint that the alleged defects are of the sort that would render the computers "unusable and unsalable" at the time of sale.

Plaintiff finally argues that HP's denial of the fact that its computers are unmerchantable "impl[ies] that the 'ordinary purpose' of a computer is to be used for a year and then discarded." Opp'n at 12. This is a mischaracterization of Defendants' argument. The claim is not that the ordinary purpose of a computer is to be used for only a year. Rather, HP is asserting that the Song-

United States District Court

Beverly Act provides an implied warranty of merchantability for only one year.  Because Plaintiff has not sufficiently alleged any latent defects that existed within one year of sale and which rendered the computers unfit for their ordinary purpose, Plaintiff has not plausibly pled a breach of implied warranty.  Accordingly, Defendants' Motion to Dismiss Plaintiff's fifth cause of action is GRANTED.  Because Plaintiff may allege facts to cure this deficiency, the dismissal is granted without prejudice.

### B. Fraud Claims

Plaintiff's first, second, third, and sixth causes of action sound in fraud and are therefore all subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure.  *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").  These causes of action are: (1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq.*; (3) fraud; and (6) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq*.

The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers."  *Daugherty*, 144 Cal. App. 4th at 833 (citing Cal. Civ. Code § 1770(a)).  "Conduct that is 'likely to mislead a reasonable consumer' . . . violates the CLRA."  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006) (quoting *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003)).

California's FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  Whether an advertisement is "misleading" must be judged by the effect it would have on a reasonable consumer.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Its coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).  Each of the three "prongs" of the UCL provides a "separate and distinct theory of liability" and an independent basis for relief.  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks and citations omitted).

Under California law, "the 'indispensable elements of a fraud claim include false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citation omitted).

As explained below, the Court GRANTS Defendants' Motion to Dismiss each of these claims without prejudice.

### 1.  CLRA, FAL, and Fraudulent Prong of UCL

The standard for all three statutes is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue.  *See Williams*, 552 F.3d at 938; *see also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  As a result, courts often analyze these three statutes together.  *See, e.g.*, *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1468-73 (2009) (analyzing UCL and CLRA claims together); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124-25 (N.D. Cal. 2010) (analyzing UCL, FAL, and CLRA claims together).  A "reasonable consumer" is an "ordinary consumer acting reasonably under the circumstances . . . [who] is not versed in the art of inspecting and judging a product."  *Colgan*, 135 Cal. App. 4th at 682 (internal quotation marks and citation omitted).

Plaintiff articulates two general theories to show that Defendants' conduct was likely to deceive the public.  First, Plaintiff alleges that, "Defendants affirmatively misrepresented to customers that the computers at issue provide 'ultra reliable performance' or 'deliver full power and performance' and constituted a 'versatile, reliable system with ample power.'"  FAC ¶ 2.

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court

Second, Plaintiff alleges that "Defendants failed to disclose to customers that the components that they offered (and included) with their computers (1) required more power (watts) to to [sic] properly function than could be provided by the included power supply unit and/or (2) were recommended by the component manufacturers to be used only when the computer had a greater supply than the one included with Defendants' computers." *Id.* HP argues that both of these theories fail to plausibly state a claim. The Court considers each of these issues separately.

### a. Affirmative Misrepresentations

Plaintiff alleges that Defendants' conduct was likely to deceive the public because it affirmatively misrepresented that the computers at issue possessed sufficient power supplies. He relies on several statements made by HP's website which advertise the "ultra-reliable performance," "full power and performance," and "versatile, reliable system" of the computers at issue. FAC ¶ 24. Similar statements are found on webpages for particular product models, advertising that a product "delivers the power you need" or is "packed with power." FAC ¶ 25.

HP argues that Plaintiff's misrepresentation claim fails because the statements about performance and power constitute non-actionable puffery. "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (citing *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)). In contrast, "misdescriptions of specific or absolute characteristics of a product [generally] are actionable." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (internal quotation marks and citation omitted). For example, in *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003), the California Court of Appeal found that the descriptions of a satellite television system as possessing "crystal clear digital video" and "CD-quality audio" was non-actionable, as the representations were nothing more than "boasts, all-but-meaningless superlatives," and "claim[s] which no reasonable consumer would take as anything more weighty than an advertising slogan." *Id.* at 1361. However, the court contrasted this description with further statements that the system would allow

United States District Court

consumers to receive 50 channels and to view television schedules seven days in advance, finding

that these latter statements were "factual representations" that were sufficient to raise triable issues.

*Id.*; *cf. Cooke, Perkiss and Liehe, Inc.*, 911 F.2d at 246 (noting that, while "an advertiser's

statement that its lamps were far brighter than any lamp ever before offered for home movies" was

found to be puffery, allegations of superior brightness based on statements such as "35,000 candle

power and 10-hour life" did support a potential Lanham Act claim) (internal quotation marks and

citation omitted).

The Court agrees with Defendants that the alleged statements are non-actionable puffery.

Generalized advertisements that a computer is "ultra-reliable" or "packed with power" say nothing

about the specific characteristics or components of the computer.  Indeed, virtually identical

statements have been found non-actionable by other courts.  *See, e.g.*, *Oestreicher v. Alienware

Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (noting that statements of product superiority

based on being "faster, more powerful, and more innovative," "higher performance," and having a

"longer battery life" are "non-actionable puffery").  A reasonable consumer could not rely on these

statements as describing the specific power capabilities of a Slimline or Pavilion computer.

Plaintiff responds that these statements are "easily susceptible to proof," and thus are not

puffery, because the wattage of the power supply can be compared with the wattage

recommendations of the graphics card.  *See* Opp'n at 20.  But this argument only begs the central

question: namely, do these statements contain or even suggest any factual representations about the

wattage provided by the power supply or the wattage recommended for various components?  The

Court concludes that they do not.  Accordingly, Plaintiff does not sufficiently allege that HP made

affirmative misrepresentations in regard to the power supplies of the computers at issue.[3]

---

[3]  Plaintiffs' claims based on Defendants' affirmative misrepresentations also fail because Plaintiff does not allege ever seeing any of the alleged statements on the website; indeed, he does not even allege that the statements were present on the website at the time of his purchase.  Further, his only statement of reliance on Defendants' conduct is entirely conclusory in nature—it does not allege with any particularity *how* Plaintiff relied on Defendants' representations, nor does it allege *why* Plaintiff would have acted differently without those representations.  In short, Plaintiff does not allege that Defendants' alleged misrepresentations influenced his decision to purchase his computer in any way.  *But see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (noting that, to have standing to bring a claim under the UCL or FAL, a named plaintiff must "(1)

15

United States District Court

### b.  Failure to Disclose

Plaintiff also alleges that Defendants' conduct was likely to deceive the public because HP failed to disclose that the computers at issue are underpowered, or to disclose the minimum recommended power supply for the offered graphics cards, and that this constitutes a fraudulent omission.  The California Court of Appeal has held that there are four circumstances in which a failure to disclose a fact can constitute fraud or deceit:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)); *accord Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010).  Plaintiff alleges that HP had an obligation to disclose under at least the last three circumstances.  Opp'n at 22, *see* FAC ¶¶ 64-72.

"[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue."  *Collins*, 202 Cal. App. 4th at 256.  Moreover, when "a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by such asserted defect cannot be 'merely' the cost of the product's repair . . . rather, for the omission to be material, the failure must pose 'safety concerns.'"  *Ford Motor*, 749 F. Supp. 2d at 987 (citing *Daugherty*, 144 Cal. App. 4th at 835-838).  Therefore, "under California law . . . [a] manufacturer's duty to consumers is limited to its

establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim."); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (holding that a consumer suing a business under the "fraud" prong of the UCL must show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the consumer's injury); *see also Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) ("[P]laintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.") (internal quotation marks and citation omitted).

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court

warranty obligations absent either an affirmative misrepresentation or a safety issue." *Id*. at 988 (internal quotation marks and citation omitted); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012).

As established above, Plaintiff has failed to allege the Defendants made affirmative misrepresentations. Therefore, Plaintiff's claim based on Defendants' fraudulent omissions is only actionable if he is able to establish some kind of safety issue. *See Ford Motor*, 749 F. Supp. 2d at 988 (noting that the requirement of proving either an affirmative misrepresentation or a safety hazard is consistent with the California Supreme Court's general policy that "although [a] consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market, the consumer nevertheless can . . . be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.").

Proving a safety issue requires showing a "sufficient nexus between the alleged design defect and the alleged safety hazard." *Wilson*, 668 F.3d at 1144. In *Wilson*, the plaintiffs based a CLRA/UCL claim on their allegations that a defect in a laptop's design weakened the connection between the power jack and the mother board, and that this defect caused laptops to ignite and catch fire. *Id.* Although laptop ignition is a safety hazard, the plaintiffs did not allege a sufficient nexus because they failed to explain how a defective power jack could cause the laptops to catch fire. *Id.*

Here, Plaintiff alleges a similar safety hazard—that the Slimline and Pavilion computers may "catch fire"—and likewise fails to establish a sufficient nexus between that hazard and the alleged defect. Plaintiff does not allege any explanation for how a lack of sufficient power causes laptops to catch fire. Instead, his only mention of "catching fire" is listing it as one of many hypothetical consequences of equipping a computer with an inadequate power supply. FAC ¶ 26. Such a cursory reference does not establish a sufficient nexus between the alleged defect and safety hazard, and does not impart HP with a duty to disclose.

17

Plaintiff's citation to cases such as *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011), and *Marsikian v. Mercedes Benz USA, LLC*, No. 08-04876, 2009 WL 8379784 (C.D. Cal. May 4, 2009), is unavailing. In both cases, the plaintiffs explained how the defects at issue could affect the workings of the car, lead to engine problems, and subsequently cause traffic accidents. Here, in contrast, Plaintiff provides no explanation that clearly links the alleged insufficient power of the laptops to their catching fire. Accordingly, Plaintiff fails to plausibly allege that Defendants had a duty to disclose the information at issue regarding the computers' power supplies.

Therefore, Defendants' Motion to Dismiss Plaintiff's first, second, and sixth causes of action which are based on Defendants' alleged affirmative misrepresentations and fraudulent omissions—the CLRA and FAL claims sounding in fraud and the fraudulent prong of the UCL— are DISMISSED. Because Plaintiff may allege facts to cure these deficiencies, these dismissals are granted without prejudice.[4]

### 2. Fraud

In addition to Plaintiff's CLRA, FAL, and UCL claims premised on fraud, Plaintiff brings a cause of action for common law fraud. Under California law, the indispensable elements of a fraud claim include: (1) misrepresentation (such as false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Kearns*, 567 F.3d at 1126.

---

[4] Contrary to Defendants' argument in footnote 5 of the Motion, Plaintiff is not prevented from amending the complaint to include a request for CLRA damages. *See* Cal. Civ. Code § 1782(d) (stating that, contrary to the 30 day notice requirement which is a prerequisite for suits for damages, an action for injunctive relief may be amended without leave of court to include a request for damages thirty days after compliance with the notice provision); *see also Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1261 (2009) (holding that, even where notice is not provided before CLRA damages are sought, dismissal with prejudice is not required, and the prayer for damages may be reinstated as soon as notice has been provided and 30 days have elapsed without cure).

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

Here, Plaintiff fails to sufficiently allege common law fraud for the same reasons that he fails to allege a claim under the CLRA, FAL, or UCL. Plaintiff has not plausibly shown any false representations by the Defendant that do not constitute non-actionable puffery or any omissions which Defendants were obligated to disclose. Moreover, Plaintiff has failed to specifically allege that he saw any of the statements that he claims are misleading, or where he saw them, under what circumstances, how they impacted his purchasing decision, etc. *Vess*, 317 F.3d at 1103 ("Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.") (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Similarly, Plaintiff's vague allegations that HP "fraudulently and deceptively failed to inform Plaintiff that the HP computer he was purchasing did not include adequate power" does not meet Rule 9(b)'s heightened pleading requirement. *Id*. at 1107-08. Therefore, Plaintiff has failed to sufficiently allege justifiable reliance, and Defendants' Motion to Dismiss Plaintiff's third cause of action for common law fraud is DISMISSED. Because Plaintiff may allege facts to cure this deficiency, this dismissal is granted without prejudice.

### 3. Unfair Prong of the UCL

Plaintiff also alleges that Defendants' acts and omissions were unfair and that Defendants engaged in these actions in order to increase their profits. FAC ¶ 101. In *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006), the California Court of Appeal held that, "[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Id*. at 1473. In determining whether a business practice is unfair under this approach, California courts balance the "impact on its alleged victim" against "the reasons, justifications, and motives of the alleged wrongdoer." *Id*.; *cf. Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (2012) (noting that "[t]he proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts," and that some appellate court opinions have applied an even more stringent test, particularly when it comes to conduct that threatens an incipient violation of antitrust law). Here, even under the more amorphous balancing test followed in *McKell*,

United States District Court

Plaintiff fails to sufficiently state a claim.  Although he makes conclusory statements that HP's alleged conduct is unfair, he does not reference any established public policy that HP's actions have violated or claim that the conduct is immoral, unethical, oppressive, or unscrupulous. Plaintiff asserts that the conduct will "continue to cause injury in fact to the general public and the loss of money and property" but does not allege any basis for concluding that this injury outweighs the reasons, justifications and motives of Defendants.  FAC ¶ 106.  Consequently, Plaintiff fails to plead facts to show that HP engaged in an unfair business practice.  Therefore, Defendants' Motion to Dismiss Plaintiff's sixth cause of action based on the unfair prong of the UCL is also DISMISSED.  Because Plaintiff may allege facts to cure this deficiency, this dismissal is granted without prejudice.

#### 4.   Unlawful Prong of the UCL

The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which the UCL then "makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Plaintiff borrows Defendants' alleged breach of class members' express warranties and violations of the CLRA, FAL, and Song-Beverly Consumer Warranty Act to support his theory of liability under the unlawful prong.  However, an alleged breach of a warranty—a contract—"is not itself an unlawful act for purposes of the UCL."  *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010).  Because the Court finds that Plaintiff did not plausibly allege any statutory violations, it concurrently finds that Plaintiff fails to plausibly allege violation of the unlawful prong of the UCL.  Therefore, Defendants' Motion to Dismiss Plaintiff's sixth cause of action based on the unlawful prong of the UCL is also DISMISSED.  Because Plaintiff may allege facts to cure this deficiency, this dismissal is granted without prejudice.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss, with leave to amend.  Should Plaintiff elect to file a Second Amended Complaint curing the deficiencies discussed herein, he shall do so within 21 days of the date of this Order.  Failure to meet the 21 day

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice.   Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 11, 2012

LUCY H. KOH
United States District Judge

Case No.: 12-CV-00421-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court