1  **GUTRIDE SAFIER LLP**
   ADAM J. GUTRIDE (State Bar No. 181446)
2  SETH A. SAFIER (State Bar No. 197427)
   TODD KENNEDY (State Bar No. 250267)
3  KRISTEN G. SIMPLICIO  (State Bar No. 263291)
4  835 Douglass Street
   San Francisco, California 94114
5  Telephone: (415) 271-6469
   Facsimile:  (415) 449-6469
6
7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN JOSE DIVISION

11

12 | DAVID ELIAS, an individual, on behalf of        | CASE NO. 5:12-cv-00421
   | himself, the general public and those similarly situated | (LHK)
13 |                                                  |
   |        Plaintiff,                                |
14 |                                                  | SECOND AMENDED CLASS
   |            v.                                    | ACTION COMPLAINT
15 |                                                  |
16 | HEWLETT-PACKARD COMPANY                          | JURY TRIAL DEMANDED
17 |        Defendant                                 |

18

19

20

21

22

23

24

25

26

27

28

David Elias, by and through his counsel, brings this Second Amended Class Action Complaint against Defendant Hewlett-Packard Company, on behalf of himself and those similarly situated, for violations of the Consumer Legal Remedies Act, false advertising, unfair trade practices, breach of express and implied warranty, and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.    Defendant advertised, marketed and sold several series of personal computers with the option to upgrade the installed components at the time of purchase, including the option to select more powerful graphics cards. Defendant knew that the upgraded components would not properly function because the computer's power supply unit was inadequate and also knew that the manufacturers of the offered upgraded components recommended more power than would be supplied by the included power supply unit, but Defendant did not inform consumers of either fact.  Instead, Defendant affirmatively misrepresented to the Plaintiff, and similarly situated customers, that the computers would have ample power to reliably operate all upgraded components that could be chosen at the time of purchase.

2.    The use of inadequate power supplies means that the power supply unit will be running at its maximum capacity for long periods of time, generating substantial heat, putting undue stress on, and leading to premature failure of, cooling fans and the power supply unit itself. As a result, Defendant's computers at issue in this case, including Plaintiff's, suffered from problems that would not otherwise occur, including failing to boot, freezing, and randomly restarting.  As explained by Advanced Micro Devices ("AMD"), which supplies a substantial percentage of the processors incorporated into Defendant's computers (including the ones incorporated in the computer Defendant sold to Plaintiff):

> The power supply is the single most important component in a system because it provides the necessary power to allow all other hardware to work. A defective or inadequate power supply can cause the system to experience:
>
> • System instability: No boot, random reboots or hangs
>
> • Performance instability: Random application crashes or hangs

- Display corruption: Dots, lines, flashes on the screen

- Display Abnormality: Additional monitor(s) in a multi monitor
  setup does not work or randomly stops working.

http://support.amd.com/us/kbarticles/Pages/powersupplysysteminstability.aspx, last visited October 22, 2012.  Plaintiff's computer suffered from all of the listed problems with system and performance instability, beginning well within the first year of ownership.

3.    Because of the inadequate power supplies, Defendant's computers at issue in this litigation, including Plaintiff's, were also much more likely to overheat, short out, melt and catch fire, creating a significant safety risk.  This is because, among other things, an overloaded or overheated power supply is more likely to send voltage surges through the computer.  *See* http://askbobrankin.com/replace_your_power_supply.html, last visited October 22, 2012. Plaintiff's computer shorted out and melted approximately 17 months after purchase, although the result easily could have occurred within the first year of ownership, especially if the computer had been used more frequently or for longer periods of time.

4.    These problems would have been avoided had Defendant disclosed that the power supply unit was insufficient (or less than recommnended by manufacturers) to operate the graphics card and other components that Plaintiff selected from the list of options at the time of purchase, because in that case Plaintiff would not have made his purchase.

5.    Defendant obtained substantial profits from the sale of these computers.  Its practices materially deceived customers into believing they were purchasing something more valuable than what they received.  Indeed, while Defendant was marketing enhanced, high performance, souped up computers and components, the very selection of these enhanced components, with their additional power needs, actually caused a *decrease* in performance and efficiency, caused premature failure and created significant safety hazards.   To obtain what was originally expected, Defendant's customers would be required to purchase upgraded power supply units (which Defendant did not offer) or incur other expensive repairs, or in some cases, like Plaintiff's, to purchase entirely new computers.

6.    In the "Slimline" series of computers that Plaintiff purchased, Defendant aggravated the problem by using a smaller case that (1) left insufficient airspace to dissipate heat

and (2) left insufficient room for a standard-size power supply unit and required a lower-wattage low-profile unit. Yet Defendant affirmatively represented, falsely, that the small case size would have no adverse effects on the power or other functionality of the computer. Plaintiff, and others similarly situated, justifiably relied to their detriment on these misrepresentations.

7. Alhough Defendant had long been aware of these problems, at the time of filing this lawsuit, it had not changed its business practices and to date it has not compensated affected customers.

## PARTIES

8. David Elias ("Plaintiff") is, and at all times alleged in this complaint was, an individual and a resident of Redondo Beach, California.

9. Defendant Hewlett-Packard Company ("Defendant" or "HP") is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Palo Alto, California.

## JURISDICTION AND VENUE

10. This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq.* Plaintiff and Defendant are "persons" within the meaning of the California Business and Professions Code, section 17201.

11. The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California.

12. Defendant has engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in the City of Palo Alto and County of Santa Clara.

13. In accordance with California Civil Code Section 1780(d), Plaintiff previously filed a declaration establishing that, in 2010, Plaintiff purchased at least one product from Hewlett-Packard Company, which has its headquarters in Palo Alto, California, in the County of Santa Clara.

14. Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

Second Amended Class Action Complaint

## SUBSTANTIVE ALLEGATIONS

15.     HP is one of the world's largest manufacturers and vendors of personal computers and related computing products.  Among these products is a line of customizable desktop computers known as the HP Pavilion Slimline series ("Slimline"), and another line of customizable desktop computers known as the HP Pavilion series ("Pavilion").  (For purposes of this complaint, the unmodified word "Pavilion" excludes the "Pavilion HPE" series.)  Defendant has manufactured over 250 customizable models within the Slimline series, and hundreds more in the Pavilion series, and it continues to sell customizable models within both series.

16.     Defendant allowed, and continues to allow, class members to customize its Pavilion and Slimline computers with faster, more powerful, upgraded components.  For example, prior to the filing of this lawsuit, class members were given the option to customize the central processor, RAM memory, graphics card, primary optical drive, networking options, ports, sound card, speakers, and/or DVD/CD burner.  Defendant's Pavilion and Slimline computers came with predetermined set of hardware and software components and peripherals—i.e., a "base configuration."  Defendant then advertised an upgraded or "recommended configuration," thereby specifically marketing and advertising computers with faster, higher performance, more powerful and/or upgraded components.  For most of the different computer components, Defendant further marketed and advertised a menu of various customizable options, typically ranging from more basic to more powerful, higher performance components.   The customizable components marketed and advertised by Defendant mostly included OEM products manufactured by third parties, who supplied the products to Defendant, who in turn, used them to build the computers to the class member's specifications.  Among these OEM products are central processors, memory, hard disk drives, and graphics cards of different sizes, speeds and power requirements.

17.     Defendant sold all of its Pavilion and Slimline computers with with an included power supply unit.  For example, at the time of initiating this lawsuit, the Slimline computers were sold with an included 220-watt power supply unit.  Previous Slimline models were sold with the same or lower-wattage power supply units, including some with as low as 100-watt power supply units.  Most computers in the Pavilion series were sold with a 300-watt power supply unit.

18.     With some of its series of computers, such as the Pavilion HPE Series, Defendant advertised and marketed to customers a choice of power supplies based on the power needs of the peripherals (such as graphics cards) that they select.  These choices were not offered to purchasers of the Slimline and Pavilion series, who were simply told in the marketing materials that the computers included a power supply unit of a particular size, e.g., 220 watts.  As will be further explained below, class members were thus led to believe that the included power supply was sufficient to operate the computers, as configured.

19.     Many of the upgraded, customizable hardware and software components and peripherals that are sold to class members as part of the Slimline and Pavilion computers actually require more watts than are provided by the included power supply unit.  Even if the components can be operated for some period of time with the wattage provided by the included power supply unit, their use will inherently overtax the power supply unit and will be substantially certain to result in the malfunctions described in this complaint, even when the computers are operated under normal conditions, and well within the first year of operation.  If, for example, the customer chooses one of the upgraded graphics cards (as did Plaintiff) and then uses the computer to run graphics-rich programs for which the card is designed (as did Plaintiff), the inadequate power supply is likely to cause the computer to randomly freeze, restart or shut down (as did Plaintiffs).  The likelihood of such malfunctions will increase if the computer is being used for multitasking, so that multiple components (for example, the graphics card and DVD drive) are being used simultaneously. For this reason, the manufacturers of the components recommend much larger power supply units than Defendant supplied, although Defendant neglected to so inform consumers.

20.     For example, Defendant marketed and advertised its HP Slimline s5t series with the graphics cards shown in left column of the table below.  As noted above, the Slimline computers are marketed and advertised with a 220-watt power supply.  On the right are the recommendations by the manufacturers of those cards (OEMs) for minimum power supply:

| Graphics Card Option | Manufacturer Recommended Power Supply |
|---|---|

| | |
|---|---|
| Integrated graphics - Intel(R) HD graphics [DVI, VGA] | Presently unknown to Plaintiff |
| 512MB DDR3 AMD Radeon HD 6450 [DVI, HDMI. VGA adapter] | 400W |
| 1GB DDR3 NVIDIA GeForce GT520 [DVI, HDMI, VGA adapter] | 300W |
| 1GB DDR3 AMD Radeon HD 6450 [DVI, HDMI. VGA adapter] | 400W |

As another example, Defendant marketed and advertised its HP Pavilion p7z series with the graphics cards shown in left column of the table below.  As noted, this series of Pavilion computers was marketed and advertised with a 300-watt power supply.  On the right are the recommendations by the manufacturers of those cards (OEMs) for minimum power supply:

| Graphics Card Option | Manufacturer Recommended Power Supply |
|---|---|
| Integrated graphics - Intel(R) HD graphics [DVI, VGA] | Presently unknown to Plaintiff |
| 512MB DDR3 AMD Radeon HD 6450 [DVI, HDMI. VGA adapter] | 400W |
| 1GB DDR3 NVIDIA GeForce GT520 [DVI, HDMI, VGA adapter] | 300W |
| 1GB DDR3 AMD Radeon HD 6450 [DVI, HDMI. VGA adapter] | 400W |
| 1GB DDR3 AMD Radeon HD 6570 [DVI, HDMI. VGA adapter] | 400W |
| 2GB DDR3 NVIDIA GeForce GT530 [DVI, HDMI, VGA adapter] | 300W |

Defendant intentionally failed to disclose that the Slimline and Pavilion computers, as configured, are underpowered.  Nor did Defendant disclose the minimum manufacturer-recommended power

supply for the advertised graphics cards and other components or peripherals.

21.     Defendant compounded the deception by permitting customers to configure and purchase the Slimline or Pavilion computers, directly from Defendant through its website, with components that exceeded the capacity of the power supplies.  Defendant knew how to avoid this deception because in other computer models—e.g., the HPE series—if customers attempted to configure the computers with comonents or peripherals that require more power than the standard power supply, they were provided the error message: "**Selection caused conflict.** This Power Supply cannot be configured with this Graphic. Please select higher wattage of PSU. Update Graphics card or Power Supply."  The words "Power Supply" were a link to choose a larger power supply.  No such message was provided to consumers in the purchase of the Slimline or Pavilion units.

22.     Furthermore, when customers, including the Plaintiff, were in the process of purchasing computers with faster, higher performance, more powerful and/or upgraded components, Defendant affirmatively marketed and advertised that its Slimline and Pavilion computers would have sufficient power to operate the touted optional customizable components. HP's website stated that the Pavilion computers provide were for "Everyday computing. **Ultra-reliable performance** delivered in a classic desktop PC. **Packed with everything you need for the internet, email, entertainment** and more." http://www.shopping.hp.com/desktops?jumpid=re_r602_ec_artgen_body_psg_jul2010_desktops , last visited Dec. 7, 2011. (emphasis added).  It also described the Slimline computers as "Slim and sleek:  Slim, sleek, space-saving PCs **deliver full power and performance** without a towering presence."  *Id.*  Only after viewing these screens was the consumer (including Plaintiff) able to choose the customization options.   No warning was given that, if optional higher performance components are selected, the computers would no longer have "ultra-reliable performance" or "full power" to run those components.  Nor was any warning given that selecting the optional, higher performance components would necessarily (1) decrease the computer's performance, efficiency, life-span and (2) increase its safety hazards.  Prior to purchasing his computer, Plaintiff reviewed, and relied to his deteriment, on each of the above

misrepresentations and omissions regarding the Slimline series.

23.     In addition, when consumers (including Plaintiff) used the "Help me choose" interface on the HP website, they were told that the Slimline and Pavilion computers would meet their "computing needs" even after stating that those "computing needs" included "Multitasking: basic and everyday activities plus using several applications at the same time, **working with complex graphics and multimedia**" and that the computer was intended for "Business/Home office: you need to manage appointments, spreadsheets, **graphics-rich presentations**, and financial applications. **A versatile, reliable system with ample power so you can multitask and communicate with others is critical."** *See* http://www.shopping.hp.com/webapp/shopping/product_advisor.do?landing=desktops&storeNam e=computer_store&jumpid=in_R329_prodexp/hhoslp/psg/desktops/leftnav_help_me_choose, last visited Dec. 7, 2011. (emphasis added).  Once again, no warning was given that, if optional higher performance components were selected, the computers would no longer be usable for graphics-rich presentations, or be reliable with ample power.   To the contrary, when the optional higher performance components were selected, the computer was less.  Plaintiff reviewed, and relied to his deteriment, on each of the above misrepresentations and omissions.

24.     Further, on HP's product page advertising each of the Slimline series (the s5t, s5xt and s5z ), and the availability of the upgraded, high performance components, Defendant made the following statements:

> **Packing power** and style into your tightest spaces, this elegant design **is ideal for family entertainment**, productivity, homework, photos, **and games**.

> * * *

> **Compact but powerful.**  Don't let the size fool you—**this series delivers the power you need, easily handling multimedia and rich graphics.**

> * * *

> Enjoy high-def videos, quality sound, and more, **with . . .[o]ptional dedicated graphics card for pumping up images and multimedia**…

(http://www.shopping.hp.com/webapp/shopping/computer_can_series.do?storeName=computer_ store&category=desktops&a1=See+all&v1=series&a2=Category&v2=Slim+and+sleek&series_n

ame=s5t_series&jumpid=in_R329_prodexp/hhoslp/psg/desktops/All_desktop_series/s5t_series, last accessed December 5, 2011.)  (emphasis added.)  Likewise, on the Pavilion p7z seres product advertising page, Defendant said: "Do more, achieve more, and play more with our Pavilion p7z series**. It's packed with power and options**—fast processors, **amazing graphics**, loads of storage—plus an all-new look." (http://www.shopping.hp.com/webapp/shopping/computer_ can_series.do?storeName=computer_store&category=desktops&a1=Category&v1=Everyday+co mputing&series_name=p7z_series&jumpid=in_R329_prodexp/hhoslp/psg/desktops/Everyday_co mputing/p7z_series, last visited Dec. 7, 2011.)  (emphasis added.)  Nowhere with regard to the advertising and marketing of the Slimline or Pavilion computers did HP disclose that additional, or upgraded, power supply units may be needed for proper operation.  Nor did HP disclose that a computer with upgraded, high performance components would necessarily not last as long or operate as well due to an undisclosed lack of power.   Plaintiff reviewed, and relied to his detriment on, each of the above misrepresentations and omissions regarding the Slimline computers.

25. Defendant also affirmatively misstated that despite the small physical size of the Slimline computers, they would not suffer from any reliability or power problems.  For example, as stated above, Defendant stated that the Slimline computers were "Compact but powerful. Don't let the size fool you—this series delivers the power you need, easily handling multimedia and rich graphics."  These statements were false and misleading because the small physical size means there is inadequate space for either a standard-sized power supply unit or for sufficient air to flow between components.  These two inadequacies are mutually reinforcing, leading to high temperatures and added stress on the power supply unit, fans, central processor, and components. The inadequacies are even more pronounced when customers select upgraded components such as graphics cards that require additional power and generate additional heat.   In fact, the Slimline computers at issue could not "easily handle multimedia and rich graphics."  To the contrary, the Slimline computers were less reliable and had shorter life spans and higher saftey risks.   Plaintiff reviewed, and relied to his detriment on, each of the above misrepresentations and omissions.

26. Plaintiff customized, and upgraded, his computer's components on the HP website

and purchased his computer directly from HP.  No other retailer was involved.

27.     Because Plaintiff's computer had an inadequate power supply to operate the upgraded components, his computer underperformed, froze, overheated, and eventually caused permanent damage to the central processing unit and a complete loss of his computer.  The problems of random freezing, restarting and shutting down all began to manifest well within the first year of operation.  Had Defendant not misrepresented the features of the computer, or had it disclosed that the power supply had a lower capacity than recommended by the manufacturers of the components, Plaintiff would not have made his purchase.

28.     HP is well aware of the need for an adequate power supply.  HP even includes a page on its website entitled "Troubleshooting Power Supply Issues" which explains how to determine the correct size power supply for upgrade or replacement.  There, HP states, "When adding or upgrading system components, such as memory, optical drives, or video cards, make sure that the power supply you purchase has a wattage rating equal or higher than the total combined wattage of all internal PC components." (http://h10025.www1.hp.com/ewfrf/wc/document?docname=bph06788&t...n_us/bph06788/loc:3 &cc=us&dlc=en&lang=en&lc=en&product=3245532, last visited Dec. 7, 2011.)  HP did not follow its own advice, however, in allowing customers like Plaintiff to initially configure the computers with components whose total combined wattage far exceeded the wattage rating of the power supply, while failing to disclose the wattage recommendations made by the component manufacturers.

29.     Plaintiff's experience was not isolated.  Many other customers have complained to HP about the issue.  For example, HP hosts an online form containing a page where a Slimline purchaser complains about not being able to play a new game on the computer.  An HP-qualified "expert," who apparently is another HP customer who has made more than 12000 posts in the forum, responds that "Slimline PCs are not meant to be gaming PCs. The power supplies are too small and the cabinets are too small to expel the heat that big gaming video cards generate." (http://h30434.www3.hp.com/t5/Desktop-Gaming/hp-pavillion-slimline-s5780-system-graphics-card-query/td-p/1052685, last visited Dec. 7, 2011.  This statement is flatly inconsistent with

Defendant's advertising and marketing, as described above.

**PLAINTIFF'S EXPERIENCES**

30.     On or about June 10, 2010, Defendant marketed and advertised, and Plaintiff purchased, an HP Pavilion Slimline s5305z computer through the HP website.  Using HP's website interface, Plaintiff selected to include in his computer the following components, including a more powerful, faster, upgraded graphics card:

| | |
|---|---|
| Processor | AMD Athlon II 215 dual core processor (2.7 GHz, 1MB L2, up to 4000 MHz bus), |
| Memory | 2GB DDR3-1066MHz SDRAM (1DMM) |
| Hard drive | 320 GB 7200 rpm SATA 3Gb/s hard drive |
| Graphics Card | 512 MB ATI Radeon HD 4350 (DVI,HDMI,VGA) |
| Optical Drive | LightScribe 16x max. DVD+/R/RW SuperMulti drive |
| Networking | Wireless LAN card |

31.     Plaintiff's computer was marketed and advertised as equipped with a 220-watt power supply.  Plaintiff was not given the option of upgrading his computer's 220-watt power supply unit.  Plaintiff paid Defendant $499.94 for his computer, as configured.

32.      Plaintiff read and relied upon each of the affirmative misrepresentations and omissions detailed above at the time he selected the Slimline series, selected his model s5305z, chose the components (including the graphics card) and paid for the computer, all of which he did directly through the HP website.  At no time did Defendant inform Plaintiff that the computer, as advertised and configured, would not properly function with a 220-watt power supply.  Nor did HP inform him that by choosing (and paying for) upgraded, higher performance components he would necessarily (1) decrease the computer's performance, efficiency, life-span and (2) increase its safety hazards, including the risk of it catching, or starting a, fire.   Indeed, Defendant even failed to inform Plaintiff that AMD, the manufacturer of the graphics card that Defendant offered and that he selected—the 512 MB ATI Radeon HD 4350—expressly recommended at least a "300 Watt or greater power supply (350 Watt for ATI CrossFireX™ technology in dual mode)." To the contrary, by virtue of the fact that Defendant marketed and advertised, and he was able to select the above components and peripherals, Plaintiff was deceptively led by Defendant to believe that those components and peripherals would be fully functional with his computer, as configured with the included power supply, and that the computer as configured satisfied all

1    OEM recommendations.

2          33.    In the months following the computer purchase, and well before the end of the first

3    year of ownership, Plaintiff's computer began to randomly freeze, restart or shut down.  At the

4    time, Plaintiff did not know what was causing the problems. In November 2011, the computer

5    ceased working entirely and could not be restarted.  Plaintiff brought the computer in for repairs

6    and learned that the power supply was defunct and that the motherboard had shorted out.  He

7    subsequently learned that the wattage rating of the included power supply was well below what

8    was needed or recommended to run the computer configuration that he had selected through the

9    HP website at the time of purchase, and that the inadequacy of the power supply unit had caused

10   his problems.  Plaintiff contacted Defendant for assistance, but it would not replace the computer

11   or even agree to repair it.

12                          **CLASS ALLEGATIONS**

13         34.    Plaintiff brings this action against Defendant on behalf of himself and all others

14   similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure

15   and section 1781 of the California Civil Code.  Plaintiff seeks to represent a group of similarly

16   situated persons.  The group is defined as follows:

17         All persons who, between December 7, 2007 and the present, purchased, in
           the United States, a computer, directly from Defendant, with an included
18         power supply unit having a rated capacity lower than (1) the total combined
           wattage of all internal PC components and peripherals or (2) the capacity rec-
19         ommended by the manufacturer of any included component or peripheral.

20         35.    This action has been brought and may properly be maintained as a class action

21   against Defendant pursuant to the provisions of Rule 23 because there is a well-defined

22   community of interest in the litigation and the proposed class is easily ascertainable.

23         36.    Numerosity:  Plaintiff does not know the exact size of the class, but it is estimated

24   that it is composed of more than 100 persons.  The persons in the class are so numerous that the

25   joinder of all such persons is impracticable and the disposition of their claims in a class action

26   rather than in individual actions will benefit the parties and the courts.

27         37.    Common Questions Predominate:  This action involves common questions of law

28   and fact to the potential class because each class member's claim derives from the deceptive,

unlawful and/or unfair statements and omissions that led Defendant's customers to believe that its Slimline and Pavilion computers were sufficiently powerly to be safely operated, that all included components and peripherals would be adequately powered, and that Defendant's Slimline and Pavilion computers were sold consistent with the power supply recommendations of the manufactuers of the all included components and peripherals. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. Among the questions of law and fact common to the class are:

a) Whether Defendant unfairly, unlawfully and/or deceptively failed to inform class members that additional power would be necessary to properly operate the Slimline and Pavilion computers, as configured;

b) Whether Defendant misled class members by representing that it was selling Slimline and Pavilion computers containing adequate power to fully operate all of the advertised features, when in fact, the power was inadequate;

c) Whether the advertised components included with Defendant's Slimline and Pavilion computers required a greater power supply to function properly than was installed;

d) Whether the manufacturers of the components and peripherals advertised and included with Defendant's Slimline and Pavilion computers recommended a greater power supply than was originally shipped with Defendant's computers;

e) Whether Defendant's advertising and marketing regarding the Slimline and Pavilion computers sold to class members was likely to deceive class members or was unfair;

f) Whether Defendant engaged in the alleged conduct knowingly, recklessly, or negligently;

g) Whether the Slimline and Pavilion computers manufactured and sold by Defendants were defective;

h) Whether the defect in the Slimline and Pavilion computers was inherent and substantially certain to result in malfunction within one year of purchase;

i) Whether the Slimline and Pavilion computers were unfit for their ordinary

purpose at the time of sale;

j)      Whether by selling the Slimline and Pavilion computers Defendants breached the express warranty or implied warranty of merchantabilty;

k)      The amount of revenues and profits Defendant received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

l)      Whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

m)      Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

38.    Typicality:  Plaintiff's claims are typical of the class because Plaintiff purchased from Defendant a computer containing components that were recommended, by their manufacturers, to only be installed in machines with a more robust power supply than what was provided by Defendant.  Thus, Plaintiff and class members sustained the same injuries and damages arising out of Defendant's conduct in violation of the law.  The injuries and damages of each class member were caused directly by Defendant's wrongful conduct in violation of law as alleged.

39.    Adequacy:  Plaintiff will fairly and adequately protect the interests of all class members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains.  Plaintiff also has no interests that are in conflict with or antagonistic to the interests of class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the class. By prevailing on his own claim, Plaintiff will establish Defendant's liability to all class members.  Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

40.    Superiority:  There is no plain, speedy, or adequate remedy other than by

1    maintenance of this class action.  The prosecution of individual remedies by members of the class

2    will tend to establish inconsistent standards of conduct for the Defendant and result in the

3    impairment of class members' rights and the disposition of their interests through actions to

4    which they were not parties.  Class action treatment will permit a large number of similarly

5    situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

6    and without the unnecessary duplication of effort and expense that numerous individual actions

7    world engender.  Furthermore, as the damages suffered by each individual member of the class

8    may be relatively small, the expenses and burden of individual litigation would make it difficult

9    or impossible for individual members of the class to redress the wrongs done to them, while an

10    important public interest will be served by addressing the matter as a class action.

11         41.     Nexus to California.  The State of California has a special interest in regulating the

12    affairs of corporations that do business here.  Defendant has its principal place of business in

13    California, and the acts complained of herein emanated from decisions made by Defendant in

14    California.  Accordingly, there is a substantial nexus between Defendant's unlawful behavior and

15    California such that the California courts should take cognizance of this action on behalf of a

16    class of individuals who reside anywhere in the United States.

17         42.     Plaintiff is unaware of any difficulties that are likely to be encountered in the

18    management of this action that would preclude its maintenance as a class action.

19                               **CAUSES OF ACTION**

20              **PLAINTIFF'S FIRST CAUSE OF ACTION**

      **(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**

21                  **On Behalf of Himself and the Class**

22         43.     Plaintiff realleges and incorporates the paragraphs of this complaint as if set forth

23    herein.

24         44.     This cause of action is brought pursuant to the California Consumers Legal

25    Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

26         45.     Defendant's actions, representations and conduct have violated, and continue to

27    violate the CLRA, because they extend to transactions that are intended to result, or which have

28    resulted, in the sale or lease of goods or services to consumers.

46.     Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

47.     The computers, including the customized, upgraded, high performance components, that Plaintiff (and others similarly situated class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

48.     By engaging in the actions, representations and conduct set forth in this complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(3), § 1770(a)(5), and § 1770(a)(7) of the CLRA.  In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods it sold.  In violation of California Civil Code §1770(a)(3), Defendant's acts and practices constitute improper representations regarding the affiliation, connection, or association with, or certification by, another of the goods it sold.  In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.  In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

49.     Specifically, Defendant's acts and practices led customers to believe that they would be provided with computers with adequate power supplies to assure proper performance, including sufficient power to operate all of the included components that were advertised and marketed by Defendant, consistent with the recommendations of the component manufacturers. Defendant thereby misrepresented (by commission and ommission) that the computers, including the components, as sponsored, approved or certified by the manufacturers of the included components when they were not.   Defendant also represented that the computers, including the components, would be upgraded, powerful, performance, more efficient, enhanced, powered, faster, high performance, full powered, amply powered, compact but powerful, and packed with power, when they were not.  Nor did Defendant's computers provide reliable or ultra-reliable performance, deliver full power and performance or deliver the power needed, as it represented.

Each of these statements represented or suggested that the upgraded performance components, were beneficial to the computer's operation, when, due to the limited power supply, they, in fact, were not. Defendant failed to inform Plaintiff that to operate the upgraded graphics card without risk of damaging the computer, Plaintiff would have to purchase and install a higer-rated power supply unit; that Defendant did not offer such a unit; and that because of the small size of the computer case, it might not be possible to purchase a higher-rated unit that would fit into the case. Defendant also failed to inform Plaintiff that the computer was likely to experience system instability and performance instability due to the inadequate power supply. Plaintiff reviewed, and relied to his detriment, on all of the above misrepresentations and omissions.

50.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

51.     More than thirty days prior to the filing of this Second Amended Complaint, Plaintiff gave notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  Defendant failed to do so.  Among other things, it failed to identify similarly situated customers; notify them of their right to correction, repair, replacement or other remedy; and provide that remedy.  Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of himself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

52.     Plaintiff also requests that this Court award him his costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf Of Himself and the Class**

53.     Plaintiff realleges and incorporates by reference the paragraphs of this complaint as if set forth herein.

54.     Beginning at an exact date unknown to Plaintiff, but within three (3) years

preceding the filing of this lawsuit, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of computers, including upgraded, high performance components.

55. Defendant intentionally made the misrepresentations and statements (by omission and commission) described above, that led reasonable customers, including Plaintiff, to believe that they were purchasing a computer with upgraded, high performance components, with an included power supply that was capable of fully operating all installed components and peripherals.

56. Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing certain components, purchasing additional power, or refraining from purchasing Defendant's Slimline computers.

57. Defendant's acts and omissions are likely to deceive the general public.

58. Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

59. The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

60. Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

61. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in

part, within three (3) years preceding the filing of this lawsuit.

62.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future.  Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled.  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

63.    As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, butwhich is in excess of the jurisdictional minimum of this Court.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Himself and The Class**

64.    Plaintiff realleges and incorporates by reference the paragraphs of this complaint as if set forth herein.

65.    On or about June 10, 2010, Defendant fraudulently and deceptively failed to inform Plaintiff that the HP computer he was purchasing from HP did not include an adequate power supply to properly operate the computer, including the upgraded graphics card that he had selected from Defendant's list of compatible upgrades and that HP then installed in the computer prior to shipping it to him.  Defendant also fraudulently and deceptively failed to inform him that to operate the upgraded graphics card without risk of damaging the computer, Plaintiff would have to purchase and install a higer-rated power supply unit. Defendant also fraudulently and

deceptively failed to inform him that Defendant did not offer such a unit, and that because of the small size of the computer case, it might not be possible to purchase a higher-rated unit that would fit into the case.  Defendant also fraudulently and deceptively failed to inform him that AMD, the manufacturer of the graphics card selected by him, recommended a higher power supply than was included in Plaintiff's computer.  Defendant fraudulently and deceptively failed to inform Plaintiff that because the HP computer he was purchasing did not include adequate power supply to properly operate the computer, including the upgraded graphics card, which he had selected from Defendant's list of compatible upgrades, the computer would necessarily be less efficient, less powerful, under or poorly perform, have a shortened life expectancy and increase the safety risks due to overheating and potentially internal fires.

66.    These omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase his computer, as configured.

67.    In not so informing Plaintiff, Defendant breached its duty to him.  Defendant also gained financially from, and as a result of, its breach.

68.    Plaintiff and those similarly situated relied to their detriment on Defendant's fraudulent omissions.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, purchasing different computers and/or components.

69.    Defendant had a duty to inform class members at the time of the computer purchases of the inadequate power supply units in the computers that they were purchasing.  Defendant also had a duty inform class members that the manufacturers of the components and periperals included with its computers, individually and in the aggregate, recommended a higher power supply than was included with its computers.  Defendant omitted to provide this information to class members.  Class members relied to their detriment on Defendant's omissions.  These omissions were material to the decisions of the class members to purchase the computers.  In making these omissions, Defendant breached its duty to class members.  Defendant also gained

financially from, and as a result of, its breach.

70. By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, to purchase certain computers and components.

71. Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's omissions, and, accordingly, were damaged by the Defendant.

72. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Slimlines computers and and components.

73. Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
#### (Breach of Express Warranty)
#### On Behalf of Himself and the Class

74. Plaintiff realleges and incorporates by reference the paragraphs of this complaint as if set forth herein.

75. This cause of action is brought pursuant to Calfironia Commerical Code § 2100, et seq. as well as the common law.

76. Plaintiff, and those similarly situated, were "buyers" of goods as defined in California Commerical Code § 2103.

77. Defendants were "sellers" and "merchants" as those terms are defined in California Commerical Code §§ 2103 and 2104.

78. Defendants' written product warranties state, in pertinent part, in similar or identical terms, as follows:

> HP warrants that the HP Hardware Products that you have purchased or leased from HP are free from defects in materials or workmanship under normal use during the Limited Warranty Period [of one year].

79. Plaintiff, and those similarly situated, who purchased HP Slimline computers

received materially similar, if not identical, written warranties from Defendants.

80.     These representations became part of the basis of the bargain in the purchases by Plaintiff, and those similarly situated, of Defendants' products, and thus qualify as "express warranties" as defined by section 2313 of the California Commercial Code in connection with the sale of goods to Plaintiff and those similarly situated.

81.     By selling computers with insufficient power supplies, Defendants breached this written warranty in that the computers were not free from defects in materials or workmanship under normal use for the warranty period.  To the contrary, Defendants' computers, given their inadequate power supplies, could not and would not function properly under normal use, within the first year of operation.  Rather, they would (and in Plaintiff's case, did) randomly freeze, restart, and shut down during that period.  In normal operation, they were also substantially more likely to (and in Plaintiff's case, approximately 17 months after purchase, did) overheat, result in total failure of the power supply unit, and cause shorting out and melting of the central processing unit, rendering it inoperable.  Finally, because of voltage fluctuations caused by the inadequate power supply, the computers were substantially more likely catch fire, creating a significant safety hazard.

82.     None of these malfunctions, including the random freezing, restarting and shutting down, are symptoms of a normally functioning computer.  Rather, they are symptoms of the inherent defect:  failing to include adequate power supplies to run the computers and upgraded components that HP advertised, marketed and sold as being compatible and customizable, and that HP itself installed into the computers. The defects were substantially certain to occur under normal use, because the normal use of the computers and their included components (particularly for graphics and multitasking) would require power in excess of what could be supplied by the power suply unit.

83.     The defect in the computers was not apparent at the time of purchase, because HP failed to disclose (1) the power requirements of the included components, (2) the component manufacturers' power recommendations, or (3) the fact that the rating of the included power supply was less than the required or recommended power needs.

84.     As a result of Defendant's sale of defective products that do not perform as warranted and are unfit for normal use, Plaintiff, and those similarly situated, have suffered damages.

85.     Plaintiff contacted Defendant for assistance, but they would not replace the computer or even agree to repair it.  Plaintiff has accordingly provided Defendant with sufficient notice of the breach pursuant to section 2607 of the California Commerical Code.

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Violation of the Song-Bervely Consumer Warranty Act, Civil Code §§ 1790, Et. Seq)**
**On Behalf of Himself and the Class**

86.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

87.     This cause of action is brought pursuant to the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790, et seq (the "Act").

88.     Plaintiff, and those similarly situated, were "buyers" of "consumer goods" as those terms are defined under California Civil Code section 1791.  The HP Slimline and Pavilion computers sold to Plaintiff, and those similarly situated, are "consumer goods" as defined in the Act.

89.     Defendants were "manufacturers," "retail sellers," "sellers" and "retailers," as those terms are defined in section 1791 of the Act.

90.     An implied warranty of merchanability arose out of and was related to Defendants sales of their Slimline and Pavilion computers.

91.     Defendants breached the implied warranty of merchanability by selling defective computers—i.e., computers with power supplies that were not sufficient to fully operate the computer and all of its included components.  These computers were unfit for their ordinary purpose at the time of sale because, regular use for their ordinary purpose (including use of the graphics functions and multitasking) would require more power than could be supplied, leading to the system failures and hardware failures described above, and creating a substantial risk of fire, a safety hazard.

92.     Defendants also made "express warranties" (set forth above) as defined by § 1791.2 of the Act in connection with the sales of consumer goods to Plaintiff and those similarly situated.  By selling computers with insufficient power supplies, Defendants breached this written warranty in that the computers were not free from defects in materials or workmanship under normal use.

93.     As a result of Defendants' sale of defective products that do not perform as warranted and are unfit for normal use, Plaintiff, and those similarly situated, have suffered damages.

94.     Plaintiff contacted Defendants for assistance, but they would not replace the computer or even agree to repair it.  Plaintiff, and those similarly situated, have accordingly been unable to obtain appropriate relief in the form of replacement, repair or restitution.

95.     Plaintiff and the Class have suffered and will continue to suffer damages as a result of Defendants' failure to comply with their warranty obligations.  Accordingly, Plaintiff and the Class are entitled to recover such damages under the Song-Beverly Act, including damages pursuant to Civ. Code §§ 1791.1(d) and 1974.

96.     Defendants' breaches of warranty, as set forth above, were willful. Accordingly, a civil penalty should be imposed upon Defendants in an amount not to exceed twice the amount of actual damages.

### PLAINTIFF'S SIXTH CAUSE OF ACTION
**(Unfair, Unlawful and Deceptive Trade Practices,
Business and Professions Code § 17200, et seq.)
On Behalf of Himself and the Class**

97.     Plaintiff realleges and incorporates by reference the paragraphs of this complaint as if set forth herein.

98.     Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this complaint.   In particular, Defendant has engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.      deceptively representing to Plaintiff, and those similarly situated, that its computers included sufficient power to function properly;

b.      failing to inform Plaintiff, and those similarly situated, that the computers, incuding the upgraded components, they purchased did (or may) not have adequate power to properly function;

c.      failing to inform Plaintiff, and those similarly situated, that the  computers they purchased did not meet the power supply recommended by the manufacturers of the components and peripherals that were included with the computers;

d.      engaging in fraud, deceit, and misrepresentation as described herein;

e.      breaching class members' express warranties;

f.      violating the Song Beverly Consumer Warranty Act;

g.      violating the CLRA as described herein; and

h.      violating the FAL as described herein.

99.     Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices.   Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, purchasing different computers and/or components.

100.     Defendant's acts and omissions are likely to deceive the general public.

101.     Defendant engaged in these unfair practices to increase its profits.  Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

102.     The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

103.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

104.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair trade practices complained of herein.

105.    The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this lawsuit.

106.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendant from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.  Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled.  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

107.    As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.   Among other things, Plaintiff and the class lost the amount they paid for the computers.

108.    As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

      A.    On Cause of Action Number 1 against Defendant and in favor of Plaintiff and the other members of the Class:

1. For restitution and injunctive relief pursuant to California Civil Code section 1780;

2. Actual damages, the amount of which is to be determined at trial;

3. Punitive Damages, the amount of which is to be determined at trial; and

4. Statutory Damages as provided by Civil Code section 1780(b), the amount of which is to be determined at trial.

B. On Causes of Action Numbers 2 and 6 against Defendant and in favor of Plaintiff and the other members of the Class:

1. For restitution pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq; and

2. For injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq and 17500, et seq;

C. On Cause of Action Number 3 against Defendant and in favor of Plaintiff and the other members of the Class:

1. An award of compensatory damages, the amount of which is to be determined at trial; and

2. An award of punitive damages, the amount of which is to be determined at trial;

D. On Causes of Action Numbers 4 and 5 against Defendant and in favor of Plaintiff and the other members of the Class:

1. An award of compensatory damages, the amount of which is to be determined at trial;

2. An award of punitive damages, the amount of which is to be determined at trial; and

3. An award of statutory damages according to proof

On all causes of action against Defendant and in favor of Plaintiff, class members and the general public:

1.  For reasonable attorneys' fees according to proof pursuant to, without limitation, the California Legal Remedies Act and California Code of Civil Procedure § 1021.5;

2.  For costs of suit incurred; and

3.  For such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  October 22, 2012                **GUTRIDE SAFIER LLP**

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Todd Kennedy, Esq.
Kristen G. Simplicio, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff