1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11              SAN JOSE DIVISION

12

13    DAVID ELIAS, individually and on behalf of all )    Case No.: 12-CV-00421-LHK
      others similarly situated and the general public,  )
14                                                   )
                              Plaintiff,             )    ORDER GRANTING-IN-PART,
15         v.                                        )    DENYING-IN-PART MOTION TO
                                                     )    DISMISS PLAINTIFF'S SECOND
16    HEWLETT-PACKARD COMPANY                        )    AMENDED COMPLAINT
                                                     )
17                            Defendant.             )
18    _____)

19         Hewlett-Packard Co. ("Defendant" or "HP") moves to dismiss Plaintiff David Elias's

20    Second Amended Complaint based on Federal Rules of Civil Procedure 12(b)(6) and 9(b).  The

21    Court found the motion to be appropriate for disposition without oral argument pursuant to Civil

22    Local Rule 7-1(b), and vacated the hearing set for May 9, 2013.  Having considered the

23    submissions of the parties and the relevant law, the Court hereby GRANTS-IN-PART and

24    DENIES-IN-PART Defendant's Motion to Dismiss.

25    I.    BACKGROUND

26         A.    Factual Allegations

27

28
                                            1

United States District Court

1    Plaintiff alleges that, on or about June 10, 2010, he purchased an HP Pavilion Slimline

2   s5305z computer through HP's website.  Second Am. Compl. ("SAC") ¶ 30, ECF No. 29.

3   Plaintiff opted to include a "recommended" graphics card, which HP marketed and advertised as a

4   "faster, higher performance, more powerful and/or upgraded" computer component.  SAC ¶¶ 16,

5   30.  Although Advanced Micro Devices ("AMD")—the manufacturer of the graphics card that HP

6   offered and that Plaintiff selected—expressly recommended a 300-watt or greater power supply for

7   the specific graphics card that Plaintiff selected, Plaintiff's Slimline computer was equipped with

8   only a 220-watt power supply.  SAC ¶¶ 2, 31, 32.  HP neither informed Plaintiff that AMD

9   recommended a greater power supply than what was included with the Slimline computer, nor

10  afforded Plaintiff the option of upgrading his computer's 220-watt power supply unit at the time of

11  purchase.  SAC ¶ 31.  Further, at no time did HP inform Plaintiff that purchasing the graphics card

12  with the Slimline's standard 220-watt power supply would decrease the computer's performance,

13  efficiency, and life-span, and increase its safety hazards, including the risk of catching fire.  SAC

14  ¶ 32.

15    In the months following the Slimline purchase, but "well before the end of the first year of

16  ownership," Plaintiff's computer began to "randomly freeze, restart, or shut down."  SAC ¶ 33.

17  Approximately 17 months after purchasing his computer, the computer "shorted out," "melted,"

18  and was damaged beyond repair.  SAC ¶¶ 3, 33.  Plaintiff then learned that the wattage rating of the

19  included power supply was well below what was needed or recommended to run the computer

20  configuration that he selected through the HP website at the time of purchase, and that the

21  inadequacy of the power supply caused his computer problems.  SAC ¶ 33.  Plaintiff contacted HP

22  for assistance, but HP "would not replace the computer or even agree to repair it."  SAC ¶ 33.

23    Plaintiff now seeks to represent a nationwide class including any person who, between

24  December 7, 2007, and the present, "purchased . . . a computer, directly from Defendant, with an

25  included power supply unit having a rated capacity lower than (1) the total combined wattage of all

26  internal PC components and peripherals or (2) the capacity recommended by the manufacturer of

27  any included component or peripheral."  SAC ¶ 34.

28

United States District Court

2

### B.     Procedural History

Plaintiff filed a putative class action complaint against Defendant in the Santa Clara County Superior Court on December 9, 2011, ECF No. 1-2, and subsequently filed his First Amended Complaint ("FAC") on December 22, 2011, ECF No. 1-3.  HP removed the case to this Court on January 26, 2012.  ECF No. 1.  The case was assigned to the undersigned judge on January 31, 2012.  ECF No. 7.  HP then filed a Motion to Dismiss Plaintiff's First Amended Complaint based on Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Mot. to Dismiss Pl.'s FAC, ECF No. 11.  On October 11, 2012, this Court granted Defendant's Motion to Dismiss the FAC with leave to amend.  *See* Order Granting Mot. to Dismiss ("Order"), ECF No. 26.

On October 22, 2012, Plaintiff filed a Second Amended Complaint.  ECF No. 29.  Plaintiff's Second Amended Complaint narrows the proposed class to only those people who, like Plaintiff, customized and purchased their computers directly through HP's website, rather than purchasing them from a third-party retailer, and sets forth additional factual allegations to support his claims for relief.  *See* Opp'n at 1.

On November 6, 2012, HP filed a Motion to Dismiss Plaintiff's Second Amended Complaint.  *See* Mot. to Dismiss Pl.'s SAC. ("Mot."), ECF No. 30.  HP contends that none of Plaintiff's changes or new allegations serve to cure the deficiencies identified by the Court previously.  *Id*. at 2.  Plaintiff filed a timely opposition to HP's second Motion to Dismiss, *see* Pl.'s Opp. to Def.'s Mot. to Dismiss Pl.'s SAC ("Opp'n"), ECF No. 31, to which HP filed a reply, *see* Def.'s Reply Supp. Mot. to Dismiss P1.'s SAC ("Reply"), ECF No. 32.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

3

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor is a court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.  Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

## B.     Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."

*United States District Court*

4

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks and citation omitted).  A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

### C.    Leave to Amend

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . .  [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

## III.    DISCUSSION

Plaintiff's Second Amended Complaint raises six causes of action: (1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq.*; (3) fraud; (4) breach of express warranty pursuant to California Commercial Code §§ 2100, *et seq.*; (5) violation of the Song-Beverly Consumer Warranty Act, Civil Code §§ 1790, *et seq.*; and (6) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*  The Court first addresses Plaintiff's breach of warranty claims, then addresses Plaintiff's claims sounding in fraud, and finally addresses Plaintiff's remaining UCL claims.

### A.    Breach of Warranty Claims

**1.      Breach of Express Warranty**

HP's written warranty states, in pertinent part, that, "HP warrants that the HP Hardware Products that you have purchased or leased from HP are free from defects in materials or workmanship under normal use during the Limited Warranty Period [of one year]." SAC ¶ 78. Plaintiff's fourth cause of action alleges that HP breached its express warranty by "selling computers with insufficient power supplies" which "could not and would not function properly under normal use, within the first year of operation." SAC ¶ 81.  HP argues that Plaintiff's breach of warranty claim must fail as a matter of law because Plaintiff's computer functioned properly throughout the one-year period and beyond.  Reply at 2.

An express warranty is "a contractual promise from the seller that the goods conform to the promise.  If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006) (modified) (citing Cal. U. Com. Code §§ 2313(a) & 2714(2)).   Proof of reliance on specific promises is not required.  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010).

In the Court's October 11, 2012 Order granting HP's Motion to Dismiss the FAC, the Court found that Plaintiff failed to state a claim for breach of express warranty because Plaintiff "[did] not allege any facts regarding the likelihood that the [claimed defect] would lead to malfunction [within the one year warranty period]."  Order at 9; *see Daugherty*, 144 Cal. App. 4th at 830 ("The general rule is that an express warranty does not cover repairs made after the applicable time . . . period[] ha[s] elapsed.") (internal quotation marks and citation omitted).  In addition, the Court expressed doubt about whether latent defects in consumer products with limited lifespans, such as computers, could give rise to breach of warranty claims.  *See* Order at 8-9 (distinguishing cases involving electronics from *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001), which involved defects in the foundations of plaintiffs' presumably long-lasting houses, and held that "proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction

6

United States District Court

during the useful life of the product.").  The Court further found that, even if *Hicks* were applicable to the computers at issue in this case, Plaintiff's Complaint failed to sufficiently allege an inherent defect that was "substantially certain" to result in malfunction.  Order at 9.

Plaintiff's Second Amended Complaint attempts to cure these deficiencies.  First, Plaintiff specifically alleges that the defects in his computer manifested during the one-year warranty period.  According to Plaintiff, "Defendants' computers, given their inadequate power supplies, could not and would not function properly under normal use, *within the first year of operation*.  Rather, they would (and in Plaintiff's case, did) randomly freeze, restart, and shut down during that period."  SAC ¶ 81 (emphasis added); *cf. Daugherty*, 144 Cal. App. 4th at 830 (finding that plaintiff failed to state a claim for breach of express warranty where it was "undisputed" that the defect alleged did not cause any malfunction within the warranty period).

Second, Plaintiff adds factual allegations to the SAC to show why the computer malfunctions he identified were not "regular occurrences when troubleshooting computers," *cf.* Order at 11, but rather defects caused by the inadequate power supply.  Specifically, Plaintiff contends that the use of inadequate power supplies with the computers at issue in this case "means that the power supply unit will be running at its maximum capacity for long periods of time, generating substantial heat, putting undue stress on, and leading to premature failure of, cooling fans and the power supply unit itself."  SAC ¶ 2.  Consequently, Plaintiff contends that Defendant's computers—including his own—suffered from problems "that would not otherwise occur," including "failing to boot, freezing, and randomly restarting."  *Id.*  In further support of this position, Plaintiff cites to the Advanced Micro Devices website,[1] which lists the problems cited by Plaintiff as direct results of a "defective or inadequate power supply."  *Id.* (stating that a defective or inadequate power supply can cause the system to experience performance and system instability, including "random reboots or hangs" and "[r]andom application crashes or hangs" as well as

---

[1]  According to Plaintiff, Advanced Micro Devices "supplies a substantial percentage of the processors incorporated into Defendant's computers (including the ones incorporated in the computer Defendant sold to Plaintiff)."  SAC ¶ 2.

7

United States District Court

display corruption and abnormality).  Plaintiff's SAC also includes specific allegations explaining why the wattage difference between the power supply provided with HP's computers and the power supply needed for the graphics card are more likely to lead to malfunction.  *See, e.g.*, SAC ¶ 3 (alleging that "an overloaded or overheated power supply is more likely to send voltage surges through the computer").

For purposes of this Motion, the Court finds that Plaintiff has sufficiently alleged facts which, if true, may demonstrate that HP breached its express warranty.  Plaintiff has alleged facts that the power supply in his computer was insufficient for the computer's components, that the insufficiency was likely to result in malfunctions beyond what could be considered normal troubleshooting, and that Plaintiff actually experienced these issues during the express warranty period.  Thus, the Court finds that Plaintiff's amended allegations are sufficient to survive a motion to dismiss.  Accordingly, Defendant's Motion to Dismiss Plaintiff's fourth cause of action is DENIED.

### 2.    Song-Beverly Consumer Warranty Act

Plaintiff's fifth cause of action is that HP's sale of the computers at issue violates the Song-Beverly Consumer Warranty Act, which provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Cal. Civ. Code § 1792.  By its terms, the Song-Beverly Act applies only to goods sold in California.  *Id.*  To be merchantable, consumer goods must: "(1) [p]ass without objection in the trade under the contract description[;] (2) [be] fit for the ordinary purposes for which such goods are used[;] (3) [be] adequately contained, packaged, and labeled[; and] (4) [c]onform to the promises or affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1(a).  The implied warranty "is coextensive in duration with an express warranty which accompanies the consumer goods," but "in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer."  Cal. Civ. Code § 1791.1(c).

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

United States District Court

1    The implied warranty of merchantability does not "impose a general requirement that goods

2    precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of

3    quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (internal

4    quotation marks and citation omitted).  "The core test of merchantability is fitness for the ordinary

5    purpose for which such goods are used." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303

6    (2009) (quoting *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007)).  "Such fitness

7    is shown if the product is in safe condition and substantially free of defects[.]" *Id.* (internal

8    quotation marks and citations omitted).

9    HP argues that the Song-Beverly Act does not apply to Plaintiff because his computer

10   malfunctioned seventeen months after its sale, which is beyond the one-year maximum duration set

11   forth in Section 1791.1(c).  Mot. at 7.  Plaintiff responds by arguing that the Second Amended

12   Complaint alleges facts which demonstrate that, "[i]n the months following the computer purchase,

13   and well before the end of the first year of ownership, Plaintiff's computer began to randomly

14   freeze, restart, or shut down," and that these problems rendered the computer unfit for its ordinary

15   use.  Opp'n at 13 (citing SAC ¶¶27, 33, 81); *see also* SAC ¶ 91.  HP disputes that these

16   malfunctions are anything other than routine.  Reply at 4.  While the Court expresses some

17   skepticism that Plaintiff's random shutdowns and reboots were so pervasive or problematic as to

18   render his computer "unfit for its ordinary purpose," the Court finds that, as described in the

19   previous section, Plaintiff's additional factual allegations are sufficient to state a claim for relief for

20   purposes of a motion to dismiss.

21   HP argues further that Plaintiff's Song-Beverly Act claim fails because Plaintiff did not

22   present the product to an authorized representative of HP during the one-year warranty period.

23   Specifically, HP cites to *Gonzalez v. Drew Indus.*, 750 F. Supp. 2d 1061 (C.D. Cal. 2007), for the

24   proposition that, to fall within the protections of the Song-Beverly Act, Plaintiff must have

25   provided notice of the alleged warranty claim to HP within the warranty period.  Mot. at 7; Reply

26   at 5.  However, *Gonzalez* contains no clear statement to this effect.  *See Gonzalez*, 750 F. Supp. 2d

27   at 1073 (finding that notice was sufficient under the Song-Beverly Act where plaintiff provided

28

9

notice to defendant on the same date of filing the original complaint, which was fifty days prior to adding the Song-Beverly Act claim to the first amended complaint).  As noted in *Mexia*, "[t]here is nothing that suggests a requirement that the purchaser discover and report to the seller a latent defect within . . . [the duration of the express warranty]" in order bring a claim under the Song-Beverly Act.  *Mexia*, 174 Cal. App. 4th at 1310; *cf. Alvarez v. Chevron Corp.*, 656 F.3d 925, 931-32 (9th Cir. 2011) ("To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'") (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010)).

Here, Plaintiff alleges that while the malfunctions took place during the warranty period, the source of the malfunction—the insufficient power supply—was not discovered until the Plaintiff's computer short-circuited after 17 months of ownership. SAC ¶ 33.  At the time of discovery, Plaintiff contacted HP regarding the alleged breach of warranty.  *Id*.  Plaintiff therefore provided sufficient notice of breach so as to allow HP "to cure the breach and thereby avoid the necessity of litigating the matter in court." *Alvarez*, 656 F.3d at 932.  Thus, at the motion to dismiss stage, Plaintiff appears to have provided notice to HP of the alleged warranty violation within a reasonable time after discovering the reason for the breach.  Accordingly, Defendant's Motion to Dismiss Plaintiff's fifth cause of action is DENIED.

### B.    Fraud-Based Claims

Plaintiff's first, second, third, and sixth causes of action sound in fraud and are therefore all subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure.  *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").  These causes of action are: (1) violation of the CLRA; (2) violation of the FAL; (3) fraud; and (6) violation of the fraudulent prong of the UCL.

The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers." *Daugherty*, 144 Cal. App.

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

United States District Court

United States District Court

4th at 833 (citing Cal. Civ. Code § 1770(a)).[2]  Under the CLRA, sellers can be liable for "making affirmative misrepresentations as well as for failing to disclose defects in a product."  *Baba v. Hewlett–Packard Co.*, No. 09-05946, 2010 WL 2486353, *3 (N.D. Cal. June 16, 2010).  "Conduct that is 'likely to mislead a reasonable consumer' . . . violates the CLRA."  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006) (quoting *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003)).

California's FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  "In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself."  *Colgan*, 135 Cal. App. 4th at 679 (internal quotation marks and citation omitted).  Whether an advertisement is "misleading" must be judged by the effect it would have on a reasonable consumer.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Its coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)).  In order to state a cause of action under the fraud prong of the UCL, "a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question."  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).  "Instead, it is only necessary to show that members of the public are likely to be deceived."  *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647-48 (1996).

---

[2]  The acts and practices that Plaintiff challenges include: (1) making improper representations regarding the source or certification of the goods sold, (2) making improper representations regarding association with or certification by another of the goods it sold, (3) representing that its goods have characteristics that they do not have, and (4) representing that its goods are of a particular quality when they are of another.  *See* SAC ¶ 48 (citing Cal. Civ. Code §§ 1770(a)(2), 1770(a)(3), 1770(a)(5), 1770(a)(7)).

11

United States District Court

1    The standard for all three statutes is the "reasonable consumer" test, which requires a

2    plaintiff to show that members of the public are likely to be deceived by the business practice or

3    advertising at issue.  *See Williams*, 552 F.3d at 938; *see also Consumer Advocates v. Echostar*

4    *Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) ("[U]nless [an] advertisement targets a

5    particular disadvantaged or vulnerable group, it is judged by the effect it would have on a

6    reasonable consumer.") (internal quotation marks and citation omitted).  As a result, courts often

7    analyze these three statutes together.  *See, e.g.*, *Consumer Advocates*, 113 Cal. App. 4th at 1360-62

8    (finding that certain representations about the satellite television service failed to constitute

9    "misrepresentations about the quality or characteristics of goods or false advertising in violation of

10   the CLRA, or were untrue or misleading under the False Advertising Act or the UCL, or were

11   fraudulent under the UCL"); *Tait v. BSH Home Appliances Corp.*, No. 10-00711, 2011 WL

12   3941387, *2 (C.D. Cal. Aug. 31, 2011) (analyzing UCL, FAL, and CLRA claims together based on

13   plaintiff's theory of misrepresentation by omission).

14   In addition to Plaintiff's CLRA, FAL, and UCL claims premised on fraud, Plaintiff brings a

15   cause of action for common law fraud.  Under California law, the indispensable elements of a fraud

16   claim based on deceit include: (1) misrepresentation (such as false representation, concealment, or

17   nondisclosure); (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable

18   reliance; and (5) resulting damages.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996);

19   *Kearns*, 567 F.3d at 1126 (same).

20   Plaintiff articulates two general theories to show that Defendants' conduct was misleading

21   and deceptive to both him and to a reasonable consumer.  First, Plaintiff alleges that HP

22   "affirmatively misrepresented to the Plaintiff, and similarly situated customers, that the computers

23   would have ample power to reliably operate all upgraded components that could be chosen at the

24   time of purchase."  SAC ¶ 1.  Second, Plaintiff alleges that HP fraudulently and deceptively failed

25   to disclose that, by allowing customers to upgrade their computers with higher performance

26   components, HP's computers were underpowered and, consequently, "would necessarily [suffer

27

28

12

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

from] (1) [a] decrease . . . [in] performance, efficiency, life-span and (2) [an] increase i[n] safety hazards, including the risk of it catching, or starting a, fire." SAC ¶ 32.

### 1. Affirmative Misrepresentations

Plaintiff alleges that HP's conduct was likely to deceive the public, and did in fact deceive him, because HP affirmatively misrepresented that the computers at issue possessed sufficient power supplies.  In his FAC, Plaintiff relied on several statements made by HP's website which advertise the "ultra-reliable performance," "full power and performance," and "versatile, reliable system" of the computers at issue.  FAC ¶ 24.  Similar statements are found on webpages for particular product models, advertising that a product "delivers the power you need" or is "packing power and style into your tightest spaces."  FAC ¶ 25.  In the Court's prior Order, the Court found that these statements were merely non-actionable puffery, and that they did not rise to the level of affirmative representations about a verifiable fact.  *See* Order at 14-15.

In response to the Court's Order, Plaintiff has added a new factual allegation in his SAC that HP marketed the Slimine computers as "Compact but powerful."  SAC ¶ 24.  Plaintiff alleges that this statement is inherently misleading because "the small physical size [of the Slimline] means there is inadequate space for either a standard-sized power supply unit or for sufficient air to flow between components."  SAC ¶ 25.  By upgrading the video card to obtain better graphics, Plaintiff alleges that the "Slimline computers were less reliable and had shorter life spans and higher safety risks."  *Id*.  Plaintiff argues that all of the statements on Defendant's purchasing website, combined with the fact that HP "directly advertised and sold, to its customers, upgraded-higher-powered, customizable computers and components," makes these statements not just advertising puffery, but affirmative representations that the power supply unit in the computers would be sufficient for the included components.  Opp'n at 16-18.  Plaintiff contends that, unlike his FAC, the SAC specifically ties these alleged misrepresentations to the power supply wattage recommendations and thus they are factually determinable representations, and not mere puffery.  *Id*. at 17-18.

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

United States District Court

1    HP argues that Plaintiff's misrepresentation claim still fails despite amendment because the

2    statements about performance, power, and compact size constitute non-actionable puffery.  As the

3    Ninth Circuit explained in *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv.,*

4    *Inc.*, 911 F.2d 242 (9th Cir. 1990), "[t]he common theme that seems to run through cases

5    considering puffery in a variety of contexts is that consumer reliance will be induced by specific

6    rather than general assertions." *Id.* at 246.  Consequently, "[a]dvertising which merely states in

7    general terms that one product is superior is not actionable.  However, misdescriptions of specific

8    or absolute characteristics of a product are actionable." *Id.* (internal quotation marks and citations

9    omitted).  For example, in *Consumer Advocates v. Echostar Satellite Corp.*, the California Court of

10   Appeal found that the descriptions of a satellite television system as possessing "crystal clear

11   digital" video and "CD quality" audio were non-actionable, as the representations were nothing

12   more than "boasts, all-but-meaningless superlatives," and "claim[s] which no reasonable consumer

13   would take as anything more weighty than an advertising slogan." *Consumer Advocates*, 113 Cal.

14   App. 4th at 1361.  However, the Court of Appeal contrasted this description with further statements

15   that the system would allow consumers to receive 50 channels and to view television schedules

16   seven days in advance, finding that these latter statements were "factual representations" that were

17   sufficient to raise triable issues.  *Id.*; *cf. Cook, Perkiss and Liehe, Inc.*, 911 F.2d at 246 (noting that,

18   while "an advertiser's statement that its lamps were far brighter than any lamp ever before offered

19   for home movies" was found to be puffery, allegations of superior brightness based on statements

20   such as "35,000 candle power and 10-hour life" did support a potential Lanham Act claim)

21   (internal quotation marks and citation omitted).

22          The Court agrees with HP that, despite Plaintiff's amendments to his complaint, the alleged

23   statements in the SAC still only amount to non-actionable puffery.  As the Court held in its

24   previous Order, generalized advertisements that a computer is "ultra-reliable" or "packed with

25   power" say nothing about the specific characteristics or components of the computer.  *See* Order at

26   15.  Indeed, as discussed previously, virtually identical statements have been found to be non-

27   actionable by other courts.  *See, e.g., Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973

28

14

1   (N.D. Cal. 2008) (noting that statements of product superiority based on being "faster, more

2   powerful, and more innovative," "higher performance," and having a "longer battery life" are

3   "non-actionable puffery"); *see also Brothers v. Hewlett-Packard Co.*, No. 06-02254, 2006 WL

4   3093685, *4-5 (N.D. Cal. Oct. 31, 2006) (finding that HP's statements about the Pavilion computer

5   being "top of the line" and a "high-performance wireless notebook which integrates digital

6   entertainment, photography and Internet computing into a sophisticated design with desktop

7   comfort" constituted "non-actionable puffery in that they are nothing more than subjective

8   statements of the superiority of the product, and are not objectively verifiable."). Plaintiff's

9   addition of the "compact but powerful" advertisement does little to remedy this deficiency, as it is

10  equally devoid of any factual assertions that are capable of being proved false.

11          Plaintiff's arguments that these statements must be viewed in their totality because they

12  were on Defendant's website and the computers were directly sold by Defendant does little to

13  distinguish the cases cited by the Court; the statements are all mere puffery, and the combination of

14  several "puff" statements does not automatically create an actionable misrepresentation. *Cf.*

15  *Williams*, 552 F.3d at 939 (explaining that "there are a number of features of the packaging Gerber

16  used for its . . . product which could likely deceive a reasonable consumer"); *Peviani v. Natural*

17  *Balance, Inc*., 774 F. Supp. 2d 1066, 1072 (S.D. Cal. 2011) (reasoning that while some "statements

18  . . . standing on their own may constitute puffery . . . [other] allegations in the complaint [appeared]

19  to be specific rather than generalized or vague"). A reasonable consumer could not rely on these

20  statements as describing the specific power capabilities of a HP computer.

21          Accordingly, Plaintiff does not sufficiently allege that HP made affirmative

22  misrepresentations in regard to the power supplies of the computers at issue for the purpose of

23  bringing claims under the CLRA, FAL, UCL, or for common law fraud. The Court GRANTS

24  HP's Motion to Dismiss these claims with prejudice.

                    **2.      Fraudulent Omissions Claims**

26          Plaintiff also alleges that HP "fraudulently and deceptively" failed to inform him that the

27  HP computer that he was purchasing did not include an adequate power supply to properly operate

28

15

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

*United States District Court*

United States District Court

the computer with the upgraded graphics card and that, as a result of the inadequate power supply, "the computer would necessarily be less efficient, less powerful, under or poorly perform, have a shortened life expectancy and increase the safety risks due to overheating and potentially internal fires." SAC ¶ 66.

For an omission to be actionable under the CLRA and UCL, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835; *see also Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL.") (quoting *Daugherty*, 144 Cal. App. 4th at 838).[3]  The California Court of Appeal has held that there are four circumstances in which a duty to disclose may arise:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255-56 (2011) (modified) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).  "[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue." *Collins*, 202 Cal. App. 4th at 256 (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997)).

In addition, in order to prevail on a common law fraudulent omission claim, a plaintiff must show the following: "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact,

---

[3] Only Plaintiff's CLRA, UCL, and common law fraud claims appear to be predicated on HP's alleged fraudulent omissions. *See* Opp'n at 20.

16

the plaintiff must have sustained damage." *Jordan v. Paul Financial, LLC*, 285 F.R.D. 435,

454 (N.D. Cal. 2012) (citing *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007)).

      The parties appear to agree that, when "a plaintiff's claim is predicated on a manufacturer's

failure to inform its customers of a product's likelihood of failing *outside* the warranty period, the

risk posed by such asserted defect cannot be 'merely' the cost of the product's repair . . . rather, for

the omission to be material, the failure must pose 'safety concerns.'" *Smith v. Ford Motor Co.*, 749

F. Supp. 2d 980, 987 (N.D. Cal. 2010) (citing *Daugherty*, 144 Cal. App. 4th at 835-838) (emphasis

added); *see* Mot. at 13; Opp'n at 22.  Thus, for omission-based claims outside of the warranty

period, "[a] manufacturer's duty to consumers is limited to . . . [an] affirmative misrepresentation

or a safety issue." *Ford Motor Co.*, 749 F. Supp. 2d at 988 (internal quotation marks and citation

omitted).

      However, the parties dispute whether, under California law, an omission-based claim for

failures *during* the warranty period must be linked to a safety-related concern or affirmative

misrepresentation.  *Compare* Mot. at 13, *with* Opp'n at 20-21.  HP contends that, absent an

actionable misrepresentation, Plaintiff's "fraudulent omissions [are] only actionable if he is able to

establish some kind of safety issue."  Reply at 11-12 (citing the Court's previous Order relating to

post-warranty claims).  Plaintiff argues that for material problems which arise during the warranty

period, there is no requirement that those problems be related to affirmative misrepresentations or

safety concerns.  Opp'n at 21.  In support of its argument, HP cites to *Ford Motor Co.* and *Wilson

v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), among other cases.  *See* Mot. at 13.  In

*Wilson*, which involved an alleged design defect in a computer that manifested after the expiration

of the warranty, the Ninth Circuit stated that, "for [an] omission to be material, the failure must

pose 'safety concerns.'"  *See Wilson*, 668 F.3d at 1143 (citing *Ford Motor Co.*, 749 F. Supp. 2d at

987).  However, the Ninth Circuit clarified that this requirement related only to defects arising

outside of the warranty period.  *See id.* (distinguishing the facts in *Wilson* from *Baba v. Hewlett–

Packard Co.*, No. 09-05946, 2010 WL 2486353 (N.D. Cal. June 16, 2010), which applied a broader

duty to disclose, because "the defect manifested during the express warranty period").

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

Several district court decisions agree that *Wilson* does not preclude non-safety based omission claims for malfunctions during the warranty period.  *See, e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 926 (N.D. Cal. 2012) (distinguishing *Wilson* and its progeny, which "reject[ ] duty to disclose claims based on product defects that manifested themselves after the expiration of a manufacturer's express warranty," from plaintiff's claim that the product "failed to perform as expected" within warranty period); *see also Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 529 (C.D. Cal. 2012) (describing the requirement that an "undisclosed defect . . . pose 'safety concerns'" as applying only if a claim based on a failure to disclose arises outside the warranty period) (internal citation and quotation marks omitted); *Tait v. BSH Home Appliances Corp.*, --- F.R.D.---, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) ("[In] *Wilson* . . .  the Ninth Circuit clarified that the requirement to prove a safety hazard did not apply where the plaintiff began experiencing problems . . . within the express warranty period.") (internal quotations marks and citation omitted).  As noted in *Decker v. Mazda Motor of America, Inc.*, No. 11-0873, 2011 WL 5101705 (C.D. Cal. Oct. 24, 2011), which involved allegations of a defect that arose both during and after the warranty period, "[i]t makes logical sense that the average consumer would expect the manufacturer to disclose significant defects of any nature that arise within the warranty period.  But outside of that warranty period, the average consumer would only expect the manufacturer to guarantee against unreasonable safety risks."  *Id.* at *4; *cf. Ford Motor Co.*, 749 F. Supp. 2d at 988 (noting that the requirement of proving either an affirmative misrepresentation or a safety hazard outside of a warranty period is consistent with the California Supreme Court's general policy that "although [a] consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market, the consumer nevertheless can . . . be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.").  Thus, Plaintiff may allege fraudulent omissions beyond safety-related concerns if those omissions led to malfunctions during the warranty period.

        **a.**      **Post-Warranty Claims**

1      As established above, Plaintiff has failed to allege that HP made affirmative

2 misrepresentations.  Therefore, Plaintiff's fraudulent omission claims for failures outside the

3 warranty period are only actionable if he is able to establish some kind of safety issue.  *See Ford*

4 *Motor Co.*, 749 F. Supp. 2d at 988.

5      To set forth a duty to disclose based on an unreasonable safety hazard, a plaintiff must

6 allege an instance of physical injury or a safety concern as well as a "sufficient nexus" between the

7 alleged defect and the safety issue.  *See Wilson*, 668 F.3d at 1143-44.  In *Wilson*, the plaintiffs

8 based a CLRA/UCL claim on their allegations that a defect in a laptop's design weakened the

9 connection between the power jack and the mother board, and that this defect caused laptops to

10 ignite and catch fire.  *Id.*  Although laptop ignition is a safety hazard, the plaintiffs did not allege a

11 sufficient nexus because they failed to explain how a defective power jack could cause the laptops

12 to catch fire.  *Id.*

13      Here, Plaintiff alleges a similar safety hazard—that due to the insufficient power supply,

14 HP's computers were more likely to "overheat, short out, melt and catch fire, creating a significant

15 safety risk."  SAC ¶ 3.  However, Plaintiff does not allege that his computer or anyone else's

16 computer ever actually "caught fire."  SAC ¶3.  Plaintiff also does not allege that he was personally

17 injured by his computer's melting.  Moreover, Plaintiff fails to set forth any facts regarding the

18 degree to which his computer melted or explain why this melting would necessarily create an

19 unreasonable safety risk.  Furthermore, Plaintiff has failed to establish a sufficient nexus between

20 the alleged deficient power supplies and "catching fire" or "melting."  Plaintiff claims that an

21 inadequate power supply may send "voltage surges" through the computer, and then makes a

22 hypothetical proposition that his computer was thus more likely to "catch fire."  SAC ¶¶ 3, 81.

23 However, Plaintiff does not cite to any facts beyond his own hypotheticals and conjectures to show

24 a nexus between the allegedly deficient power supply, voltage surges, and fires.  Such a cursory

25 reference does not establish a sufficient nexus between the alleged defect and safety hazard, and

26 does not impart HP with a duty to disclose.  Therefore, the Court finds that Plaintiff fails to

27

28

United States District Court

19

sufficiently allege that Defendants had a duty to disclose that the computers' power supplies posed safety risks.

Thus, the Court GRANTS with prejudice HP's Motion to Dismiss Plaintiff's CLRA, UCL, and common law fraud claims that are based on Defendants' alleged post-warranty safety-based fraudulent omission claims (first, third, and sixth causes of action). *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (internal quotation marks and citation omitted).

### b.  Warranty Period Claims

Plaintiff also claims that HP's omissions regarding the sufficiency of the power supply are actionable for the failures that Plaintiff's computer experienced during the warranty period: freezing, rebooting, and randomly restarting. *See* Opp'n at 20-21.  As described above, omissions of material facts are actionable for non-safety related malfunctions so long as the problems occurred during the warranty period.  Given that Plaintiff's SAC includes new factual allegations regarding computer malfunctions that allegedly manifested *during* the warranty period, the Court proceeds to consider Plaintiff's warranty period claims regarding fraudulent omissions.

Plaintiff alleges that HP deceived him by omission under all four circumstances in which a duty to disclose may arise: "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Collins*, 202 Cal. App. 4th at 255-56 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th at 336); *see* Opp'n at 20 (citing SAC ¶¶65-69).  However, Plaintiff does not allege a basis for finding a fiduciary relationship with HP.  Rather, Plaintiff alleges only that the discrepancies between the capabilities of the power supply unit and the requirements of the "recommended" components of his computer were "known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made."  SAC ¶ 66.

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

United States District Court

Under the CLRA and UCL, "plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson*, 668 F.3d at 1145; *see id.* at 1146 n.5 ("[T]he failure to disclose a fact that a manufacturer does not have a duty to disclose, *i.e.,* a defect of which it is not aware, does not constitute an unfair or fraudulent practice [under the UCL]."). As this Court noted in *Kowalsky v. Hewlett–Packard Co.,* No. 10-CV-02176, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011), while "the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge, intent, or other conditions of a person's mind, . . . [t]his does not mean . . . that conclusory allegations of knowledge or intent suffice." (internal quotation marks and citations omitted). Rather, plaintiffs who successfully allege that a manufacturer was aware of a defect must still present at least a plausible basis for this knowledge. *See Wilson*, 668 F.3d at 1146. For example, in *Kowalsky*, this Court found that plaintiff successfully alleged that HP was aware of a defect that caused its printers to randomly skip pages when copying, scanning and faxing by alleging: (i) HP advertised that it adheres to "the recognized ISO/IEC 24734 and 24735 standards," which "require[] multiple tests using repeated scanning of a multi-page document"; and (ii) "consumers complained of the defect 'both in third-party fora as well as directly to HP'" three months before the plaintiff purchased his printer." *Kowalsky*, No. 10-CV-02176, 2011 WL 3501715, at *4.

In contrast, Plaintiff's SAC sets forth few facts to support Plaintiff's allegations that HP knew that the computer's power supply unit was inadequate at the time of Plaintiff's purchase. SAC ¶¶ 1, 65, 66. At best, Plaintiff cites to recommendations by manufacturers of minimum power supplies for certain graphics cards, though does not allege that HP knew of these manufacturer recommendations at the time of sale. *See* SAC ¶20. Likewise, Plaintiff alleges that HP has a page on its website entitled "Troubleshooting Power Supply Issues," which discusses the need for adequate power supplies. *See* SAC ¶ 28. However, this fact does not demonstrate that HP was aware that the specific customizable computers at issue in this case lacked sufficient power supplies when Plaintiff purchased the Slimline computer in June of 2010. Further, Plaintiff alleges that, at some unspecified time, one HP customer told another HP customer that "Slimline PCs are

not meant to be gaming PCs.  The power supplies are too small and the cabinets are too small to expel the heat that big gaming video cards generate." SAC ¶ 29.  This is insufficient to impute knowledge on HP.  *See Oestreicher*, 544 F. Supp. 2d at 974 n.9 ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants. There are no allegations that Alienware knew of the customer complaints at the time plaintiff bought his computer."); *see also Baba*, 2011 WL 317650, *3 (finding that plaintiff's allegations of a few complaints on the Internet were insufficient to support a claim that HP engaged in corporate fraud by making misrepresentations and omissions regarding a known defect").

Accordingly, the Court finds that Plaintiff has not sufficiently alleged enough facts to support an inference that HP knew of the power inadequacies at the time of sale.  Consequently, Plaintiff also has not sufficiently alleged that HP "intentionally" concealed or suppressed this information. *See Mui Ho v. Toyota Motor Corp.*, --- F. Supp. 2d ---, 2013 WL 1087846, *9 (N.D. Cal. 2013) (stating that, one factor for a claim for active concealment, is that "the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff").  Likewise, Plaintiff has failed to sufficiently allege a common law fraudulent omission claim because Plaintiff has not sufficiently alleged that HP knew of the computers' defects and thus "intentionally concealed or suppressed the fact with the intent to defraud the plaintiff." *Id*.

Thus, the Court GRANTS HP's Motion to Dismiss Plaintiff's CLRA, UCL, and common law fraud claims that are based solely on Defendants' alleged fraudulent omissions regarding malfunctions that manifested *during the warranty period* (first, third, and sixth causes of action).  Because Plaintiff has not previously had an opportunity to cure this deficiency and may easily do so, the Court grants Plaintiff leave to amend these claims.

## C.    Plaintiff's Remaining UCL Claims

### 1.    Unfair Prong of the UCL

Plaintiff also alleges that Defendant's acts and omissions were unfair and that Defendant engaged in these actions in order to increase its profits.  FAC ¶ 101.  In *McKell v. Wash. Mut., Inc.*,

22

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

United States District Court

United States District Court

142 Cal. App. 4th 1457 (2006), the California Court of Appeal held that, "[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Id.* at 1473.  In determining whether a business practice is unfair under this approach, California courts balance the "impact on its alleged victim" against "the reasons, justifications, and motives of the alleged wrongdoer." *Id.*; *cf. Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (noting that "[t]he proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts," and that some appellate court opinions have applied an even more stringent test, particularly when it comes to conduct that threatens an incipient violation of antitrust law).

The Court previously rejected this claim on the grounds that Plaintiff made only conclusory statements that HP's alleged conduct was unfair, but did not reference any established public policy that HP's actions have violated or claim that HP's conduct is immoral, unethical, oppressive, or unscrupulous.  Plaintiff has not materially amended his complaint to address these deficiencies.  Plaintiff does contend in his Opposition, however, that "HP appears to agree that its practices were improper" because "after this suit was filed, [HP] appears to have stopped offering customers the option to select upgraded, power-hungry components in the models at issue in the complaint." Opp'n at 2.  The Court may not consider this allegation for purposes of HP's Motion to Dismiss as it was not referenced in the SAC.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss.") (internal quotation marks and citation omitted).  However, the Court may consider this allegation in determining whether to grant leave to amend.  *See id.*  Because this change in HP's behavior could support Plaintiff's UCL claim based on unfair business practices, the Court GRANTS Defendant's Motion to Dismiss this part of Plaintiff's sixth cause of action without prejudice.  However, should Plaintiff seek to amend his complaint further, the Court will only

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

permit Plaintiff to add this particular allegation to support his UCL claim based on unfairness.  No additional, new factual allegations will be permitted to support this claim.

### 2.    Unlawful Prong of the UCL

The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which the UCL then "makes independently actionable."  *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180 (internal quotation marks and citations omitted).  Plaintiff borrows Defendants' alleged breach of class members' express warranties and violations of the CLRA, FAL, and Song-Beverly Consumer Warranty Act to support his theory of liability under the unlawful prong.  However, an alleged breach of a warranty—a contract—"is not itself an unlawful act for purposes of the UCL."  *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) ("Contractual duties are voluntarily undertaken by the parties to the contract, not imposed by state or federal law.") (internal quotation marks and citation omitted).  Therefore, "[a]n act that breaches a contract may also breach the UCL, but only when the act is unfair, unlawful or fraudulent for some additional reason."  *Id.* (citing *Smith v. Wells Fargo Bank, N.A.,* 135 Cal. App. 4th 1463, 1483 (2005)).  Because the Court finds that Plaintiff did not plausibly allege any statutory violations, it concurrently finds that Plaintiff fails to plausibly allege violation of the unlawful prong of the UCL.  However, because the Court has afforded Plaintiff leave to amend his CLRA, UCL, and common law fraud claims that are based solely on Defendants' alleged fraudulent omissions regarding malfunctions that manifested *during the warranty period*, Plaintiff may be able to cure these deficiencies with leave to amend.  Therefore, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's sixth cause of action based on the unlawful prong of the UCL with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion to Dismiss.  The Court DENIES HP's Motion to Dismiss Plaintiff's fourth and fifth causes of action based on breach of express warranty and violation of the Song-Beverly Consumer Warranty Act.  The Court GRANTS HP's Motion to Dismiss Plaintiff's first, second,

24

United States District Court

third, and sixth causes of action, brought for violations of the CLRA, FAL, UCL, and common law fraud. Because Plaintiff has already had an opportunity to amend his claims based on affirmative misrepresentations, but has failed to do so adequately, the Court dismisses these claims with prejudice. Likewise, because Plaintiff has had the opportunity to amend his safety-based omission claims, but has not sufficiently cured the deficiencies identified previously, the Court dismisses these claims with prejudice. However, because Plaintiff may allege facts to cure the deficiencies regarding his fraudulent omissions claims that are predicated on malfunctions that manifested during the warranty period, as well as his claims for unlawful and unfair conduct under the UCL, these claims are denied without prejudice.

Should Plaintiff elect to file a Third Amended Complaint curing the deficiencies discussed herein, he shall do so within 30 days of the date of this Order. Failure to meet the 30 day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: June 21, 2013

_____
LUCY H. KOH
United States District Judge

United States District Court

Case No.: 12-CV-00421-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT