United States District Court

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DAVID ELIAS, individually and on behalf of all others similarly situated and the general public, | ) ) ) | Case No.: 12-CV-00421-LHK |
| Plaintiff, | ) ) | ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD |
| v. | ) ) | AMENDED COMPLAINT |
| HEWLETT–PACKARD COMPANY | ) ) | |
| Defendant. | ) ) ) | |

Hewlett–Packard Co. ("Defendant" or "HP") moves to dismiss Plaintiff David Elias's Third Amended Complaint ("TAC"). ECF No. 45. Plaintiff has filed an opposition, ECF No. 46, and Defendant has filed a reply, ECF No. 48. The Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Accordingly, the Court VACATES the hearing on this motion set for February 6, 2014. The Case Management Conference set for February 6, 2014, at 1:30 p.m. remains as set. Having considered the submissions of the parties and the relevant law, the Court hereby DENIES Defendant's Motion to Dismiss.

I.      **BACKGROUND**

A.      **Factual Allegations**

Plaintiff alleges that, on or about June 10, 2010, he purchased an HP Pavilion Slimline s5305z computer through HP's website. TAC ¶ 33, ECF No. 44. Plaintiff elected to upgrade the base configuration to include a "recommended" graphics card, which HP marketed and advertised as a "faster, higher performance, more powerful and/or upgraded" computer component. TAC ¶¶ 16, 33. The crux of Plaintiff's complaint is that the computer he purchased was insufficiently powerful to handle the graphics card that HP marketed and advertised, and that HP knew that the computer was inadequately powered.

Specifically, Plaintiff alleges that Advanced Micro Devices ("AMD")—the manufacturer of the upgraded graphics card—expressly recommended that computers containing the specific graphics card selected by Plaintiff be powered by a 300-watt or greater power supply unit ("PSU"). TAC ¶ 35. Plaintiff alleges that in addition to receiving specifications from AMD containing this recommendation, HP was aware of the need to install a more powerful PSU than was included in Plaintiff's computer because HP had received customer complaints and warranty service requests regarding the allegedly defective PSUs. TAC ¶ 31. Plaintiff alleges that HP demonstrated its knowledge by preventing customers from selecting upgrades that exceeded the capacity of the included PSU for other models sold through the HP website. TAC ¶ 29. Nevertheless, HP installed a 220-watt PSU in Plaintiff's Slimline computer and neither informed Plaintiff that AMD recommended a 300-watt PSU, nor afforded Plaintiff the option of upgrading his computer's 220-watt PSU at the time of purchase. TAC ¶¶ 34–35. Further, at no time did HP inform Plaintiff that purchasing the graphics card with the Slimline's standard, non-customizable 220-watt PSU would decrease the computer's performance, efficiency, and lifespan, and increase its safety hazards, including the risk of catching fire. TAC ¶ 35. Plaintiff alleges that HP intentionally concealed this information with the intent to increase its sales from customers like Plaintiff, who otherwise would not have upgraded his computer to higher-cost components. TAC ¶ 30.

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

In the months following his Slimline purchase, but "well before the end of the first year of ownership," Plaintiff's computer began to "randomly freeze, restart, or shut down." TAC ¶ 36. Approximately 17 months after purchase, Plaintiff's computer "shorted out," "melted," and was damaged beyond repair. TAC ¶¶ 3, 36. Plaintiff then learned that "the wattage rating of the included power supply was well below what was needed or recommended to run the computer configuration that he selected through the HP website at the time of purchase, and that the inadequacy of the power supply caused his [computer] problems." TAC ¶ 36. Plaintiff contacted HP for assistance, but HP "would not replace the computer or even agree to repair it." TAC ¶ 36.

Plaintiff now seeks to represent a nationwide class including any person who, between December 7, 2007, and the present, "purchased . . . a computer, directly from Defendant, with an included power supply unit having a rated capacity lower than (1) the total combined wattage of all internal PC components and peripherals or (2) the capacity recommended by the manufacturer of any included component or peripheral." TAC ¶ 37.

**B.     Procedural History**

Plaintiff filed a putative class action complaint against Defendants in the Santa Clara County Superior Court on December 9, 2011, ECF No. 1-2, and subsequently filed his first amended complaint ("FAC") on December 22, 2011, ECF No. 1-3. In the FAC, Plaintiff, on behalf of the putative class, alleged six causes of action: (1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq.*; (3) fraud; (4) breach of express warranty pursuant to California Commercial Code §§ 2100, *et seq.*; (5) violation of the Song–Beverly Consumer Warranty Act ("Song–Beverly Act"), Civil Code §§ 1790, *et seq.*; and (6) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq. See* FAC ¶¶ 42–51, 52–62, 63–72, 73–82, 83–96, 97–108.

HP removed the case to this Court on January 26, 2012. ECF No. 1. The case was assigned to the undersigned judge on January 31, 2012. ECF No. 7. On March 2, 2012, HP moved to dismiss

United States District Court

the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Mot. to Dismiss Pl.'s FAC, ECF No. 11. In Defendant's Motion to Dismiss the FAC, HP attacked the FAC for failing to allege any actionable misrepresentations or omissions, and for failing to identify a cognizable injury. *Id.* at 1–2. HP contended that the FAC failed to adequately plead any type of fraud or breach of warranty claim, and moved to dismiss the FAC in its entirety. *Id.* On October 11, 2012, the Court found that Plaintiff failed to plausibly allege that Defendants fraudulently concealed the PSUs' alleged inadequacies or to explain the link between the allegedly insufficient PSUs and the malfunctions and other issues about which Plaintiff complained. The Court therefore granted Defendant's Motion to Dismiss the FAC, with leave to amend all claims. *See* Order Granting Mot. to Dismiss ("Order"), ECF No. 26.[1]

Plaintiff filed a Second Amended Complaint ("SAC") on October 22, 2012, alleging additional facts in support of the same causes of action as the FAC. ECF No. 29. Defendant again moved to dismiss all claims, arguing the SAC did not add any well-pleaded factual allegations to cure the deficiencies previously identified. *See* Mot. to Dismiss Pl.'s SAC, ECF No. 30. Specifically, HP contended that Plaintiff could still identify no actionable misrepresentations or omissions and that because Plaintiff's computer operated as warranted during the warranty period, Plaintiff could not state a claim for breach of express or implied warranty. *Id.* at 5–8, 8–13. On June 21, 2013, the Court granted in part and denied in part Defendant's Motion to Dismiss the SAC, dismissing several claims with prejudice, but with leave to amend others. *See* Order Granting-in-Part, Denying-in-Part Mot. to Dismiss Pl.'s SAC ("Second Order"), ECF No. 41.[2] The Court dismissed with prejudice Plaintiff's FAL claim because the statements alleged in support of this claim were not actionable misrepresentations, but rather non-actionable puffery. *See* Second Order at 15. For the same reason, the Court also dismissed with prejudice Plaintiff's claims under the CLRA, the fraudulent prong of the UCL, and the common law that were based on affirmative misrepresentations. *Id.* at 15. The Court found that to state a claim under the CLRA, the UCL fraud

---

[1] The Order is reported at *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 846 (N.D. Cal. 2012).
[2] The Second Order is reported at *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1125 (N.D. Cal. 2013)

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

United States District Court

United States District Court

prong, or for common law fraud, based on omissions regarding *post*-warranty period malfunctions, Plaintiff must establish that the malfunctions constituted an unreasonable safety hazard. *Id.* at 17. Because Plaintiff did not sufficiently allege such a safety risk, despite multiple opportunities to do so, the Court dismissed Plaintiff's post-warranty fraud claims with prejudice. *Id.* at 20. The Court also dismissed Plaintiff's CLRA, UCL fraud prong, and common law fraud claims based on alleged fraudulent omissions regarding malfunctions that manifested *during* the warranty period, finding that Plaintiff pleaded insufficient facts to show that HP knew of the PSU inadequacies at the time of sale and intentionally concealed the issue. *Id.* at 20–22. However, the Court granted Plaintiff leave to amend his fraud claims arising from warranty-period malfunctions because he had not yet been afforded an opportunity to cure these deficiencies. *Id.* at 22. The Court also dismissed without prejudice Plaintiff's claims under the unlawful and unfair prongs of the UCL. *Id.* at 23, 24. Plaintiff's UCL unlawful prong claim failed because Plaintiff had not adequately stated a claim for any predicate statutory violations (such as violation of the CLRA). *Id.* at 24. Plaintiff's UCL unfair prong claim failed because Plaintiff made only conclusory allegations that HP's conduct was unfair, and the SAC failed to identify a public policy that HP's conduct violated. *Id.* at 23. Finally, the Court denied Defendant's Motion to Dismiss the SAC as to Plaintiff's express and implied warranty claims, and Plaintiff may proceed on these claims. *Id.* at 8, 10.

On July 22, 2013, Plaintiff filed a Third Amended Complaint ("TAC"), which includes additional factual allegations in support of his fraudulent omission claims. ECF No. 44. *See* TAC ¶¶ 46–57, 69–78, 102–113. On August 5, 2013, Defendant moved to dismiss Plaintiff's claims under the CLRA, the fraud prong of the UCL, and for common law fraud. Mot. to Dismiss Pl.'s TAC ("Mot.") at 1, ECF No. 45. In its Motion, Defendant contends that none of Plaintiff's changes or new allegations cures the deficiencies previously identified by this Court. *Id.* Plaintiff filed an opposition ("Opp'n"), ECF No. 46, and Defendant filed a reply ("Reply"), ECF No. 48.

United States District Court

## II.      LEGAL STANDARDS

### A.      Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is a court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### B.      Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). A plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996). However, "intent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

## III.     DISCUSSION

Plaintiff's TAC alleges that HP fraudulently sold computers equipped with PSUs HP knew were incapable of providing adequate power to the included components, and that HP failed to disclose this defect to purchasers. TAC ¶ 1. Based on these allegations, the TAC states six causes of action: (1) violation of the CLRA; (2) violation of the FAL; (3) fraud; (4) breach of express warranty; (5) breach of the implied warranty provided by the Song–Beverly Act; and (6) violation of California's UCL. *See* TAC ¶¶ 46–57, 58–68, 69–78, 79–90, 91–101, 102–113.

Of the six, three are not at issue in the instant Motion to Dismiss. The Court previously dismissed with prejudice Plaintiff's FAL claim. *See* Second Order at 20. Therefore, the Court strikes this claim from the TAC. Moreover, because the Court denied Defendant's Motion to Dismiss the SAC as to both Plaintiff's express warranty claim and his Song–Beverly Act implied warranty claim, Plaintiff may proceed on these claims. *Id*. at 8, 10. Defendant now moves to

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

dismiss the remaining three claims: (1) violation of the CLRA; (2) violation of the UCL's fraud prong; and (3) common law fraud. Mot. at 1; *see* TAC ¶¶ 46–57, 69–78, 102–113.

Insofar as these three fraud claims were based on either affirmative misrepresentations or fraudulent omissions regarding *post*-warranty malfunctions, the Court previously dismissed these claims with prejudice. *Id*. at 15, 20. However, the Court granted Plaintiff leave to amend the TAC to pursue claims under the CLRA, UCL's fraud prong, and for common law fraud based on malfunctions *during* the warranty period.[3] *Id*. at 22. Whether Plaintiff has adequately alleged this theory is the critical question now before the Court. *See* TAC ¶¶ 46–57, 69–78, 102–113; Mot. at 1. The Court turns to this question, and then addresses ancillary issues raised by the TAC.

**A.      Fraud Based Claims**

**1.      Statutory Background**

Plaintiff's causes of action for violation of the CLRA, the fraud prong of the UCL, and common law fraud all sound in fraud and are therefore subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."). However, "because a plaintiff bringing fraud by omission claims 'will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim,' plaintiffs may plead fraud by omission by alternative means." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) (quoting *Falk v. Gen. Motors Corp.,* 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)).

The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2006) (citing Cal. Civ. Code § 1770(a)). Under the CLRA, sellers can be liable for "making affirmative misrepresentations as well as for failing to

---

[3] Because the Court has already ruled on the matter, *see* Second Order at 18–22, and has no cause to reconsider its prior ruling, the Court is unmoved by HP's renewed complaints that such warranty-period fraudulent omissions are not actionable. *See* Mot. at 1, 6–9 (rearguing this point and contending that such claims are simply an attempt to convert a warranty claim into fraud).

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

United States District Court

1   disclose defects in a product." *Baba v. Hewlett–Packard Co.*, No. 09-5946, 2010 WL 2486353, at

2   *3 (N.D. Cal. June 16, 2010). "Conduct that is 'likely to mislead a reasonable consumer' . . .

3   violates the CLRA." *Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663, 680 (2006)

4   (quoting *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003)).

5          California's UCL provides a cause of action for business practices that are (1) unlawful, (2)

6   unfair, or (3) fraudulent.[4] Cal. Bus. & Prof. Code § 17200. The UCL's coverage is "sweeping," and

7   its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg. Co.*,

8   471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20

9   Cal. 4th 163 (1999)). To state a cause of action under the fraud prong of the UCL, "a plaintiff need

10  not show that he or others were actually deceived or confused by the conduct or business practice

11  in question." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000). "Instead, it is only

12  necessary to show that members of the public are likely to be deceived." *Podolsky v. First*

13  *Healthcare Corp.*, 50 Cal. App. 4th 632, 647–48 (1996).

14         The standard for both the CLRA and the UCL is the "reasonable consumer" test, which

15  requires that a plaintiff show that members of the public are likely to be deceived by the business

16  practice or advertising at issue. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir.

17  2008); *see also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360

18  (2003) ("[U]nless [an] advertisement targets a particular disadvantaged or vulnerable group, it is

19  judged by the effect it would have on a reasonable consumer.") (internal quotation marks and

20  citation omitted). As a result, courts often analyze these two statutes together. *See, e.g., Consumer*

21  *Advocates*, 113 Cal. App. 4th at 1360–62 (finding that certain representations about the satellite

22  television service failed to constitute "misrepresentations about the quality or characteristics of

23  goods or false advertising in violation of the CLRA, or were untrue or misleading under the False

24  Advertising Act or the UCL, or were fraudulent under the UCL"); *Tait v. BSH Home Appliances*

25  *Corp.*, No. 10-711, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (analyzing UCL and CLRA

26  ─────────────────

27  [4] The first prong, prohibiting unlawful business practices, is addressed below, in Part III.B.
    Plaintiff has not alleged that Defendant has violated the unfair prong of the UCL in the TAC, and
    the Court therefore need not consider it. *See* TAC ¶¶ 102–113.

28

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

United States District Court

1   claims together based on plaintiff's theory of misrepresentation by omission). In line with this

2   authority, this Court will analyze Plaintiff's CLRA claim with his claim for fraud under the UCL.

3        Plaintiff also brings a cause of action for common law fraud. Under California law, the

4   elements of fraud are (1) misrepresentation (such as false representation, concealment, or

5   nondisclosure); (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable

6   reliance; and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Kearns*,

7   567 F.3d at 1126 (same). Because the elements of common law fraud are essentially identical to

8   those for a claim of active concealment under the CLRA and the UCL fraud prong, the Court

9   analyzes Plaintiff's common law fraud claim along with his claim for active concealment in Part

10  III.A.5. *Compare Lazar*, 12 Cal. 4th at 638 *with SCC Acquisitions, Inc. v. Cent. Pac. Bank*, 207

11  Cal. App. 4th 859, 863 (2012).

12       The TAC articulates a theory of fraud by omission and concealment to show that

13  Defendant's conduct misled and deceived Plaintiff and a reasonable consumer, thereby violating

14  the CLRA, the fraud prong of the UCL, and the common law prohibition against fraud. TAC ¶ 35.

15  Specifically, Plaintiff alleges that HP fraudulently and deceptively failed to disclose that the PSUs

16  included in computers purchased by Plaintiff and putative class members were not sufficient to

17  power optional component upgrades, which HP made available and recommended at the time of

18  purchase. TAC ¶ 20. Plaintiff contends that HP failed to disclose this information to customers

19  despite being aware that choosing these upgrades would necessarily result in "(1) [a] decrease . . .

20  [in] performance, efficiency, life-span and (2) [an] increase i[n] safety hazards, including the risk

21  of it catching, or starting a, fire." TAC ¶ 35. Plaintiff further alleges that HP intentionally

22  concealed this information with the purpose of upselling customers more expensive, optional

23  upgrades. TAC ¶ 75.[5]

24

25  _____

26  [5] Additionally, Plaintiff alleges that HP "affirmatively misrepresented to the Plaintiff, and similarly
    situated customers, that the computers would have ample power to reliably operate all upgraded
27  components that could be chosen at the time of purchase." TAC ¶ 1. However, as explained above,
    the Court in its previous order dismissed with prejudice Plaintiff's fraud claims based on
28  affirmative misrepresentations. *See* Second Order at 15.

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1    For such an omission to be actionable under the CLRA and the fraud prong of the UCL,

2    "the omission must be . . . of a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal.

3    App. 4th at 835; *see also Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557

4    (2007) ("[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to

5    deceive' anyone within the meaning of the UCL.") (quoting *Daugherty*, 144 Cal. App. 4th at 838).

6    A duty to disclose material facts can arise where: (1) the defendant has exclusive knowledge of

7    such material facts not known or reasonably accessible to the plaintiff; or (2) the defendant

8    conceals a material fact from the plaintiff.[6] *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255–

9    56 (2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Plaintiff alleges that

10   Defendant's failure to disclose the insufficiency of the included PSUs is actionable on both

11   grounds. TAC ¶ 71 (information regarding allegedly defective PSU was material, "known

12   exclusively to, and actively concealed by, Defendant, [and] not reasonably known to Plaintiff").

13   Under both theories—exclusive knowledgeable and active concealment—Plaintiff must

14   allege, as a threshold matter: (1) the existence of a material fact (2) of which Defendant was aware.

15   *See Wilson*, 668 F.3d at 1145; *Collins*, 202 Cal. App. 4th at 256. The Court addresses these

16   common elements before determining whether Plaintiff has adequately pleaded exclusive

17   knowledge or active concealment.

18        **2.    Materiality**

19   A non-disclosed fact is material "if the omitted information would cause a reasonable

20   consumer to behave differently if he or she were aware of it." *O'Shea v. Epson Am., Inc.*, No. 09-

21

---

22   [6] The TAC also alleges HP's nondisclosure is actionable because defendant made partial
23   representations that were misleading because some other material fact had not been disclosed. TAC
     ¶ 53; *see Collins*, 202 Cal. App. 4th at 255–56. However, partial representation claims require
24   affirmative representations, which are rendered misleading because qualifying information is
     withheld. *See, e.g., Warner Constr. Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970) (holding that a
25   partial representation claim may arise when "the defendant makes representations but does not
     disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to
26   mislead"); *Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 666 (1996) (same). Because the
     Court previously found that the alleged affirmative representations by Defendant amounted to mere
27   puffery and dismissed with prejudice Plaintiff's claims based on affirmative misrepresentations,
     Plaintiff cannot proceed on the basis of misleading partial representations. *See* Second Order at 15.

28

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

8063, 2011 WL 3299936 (C.D. Cal. July 29, 2011); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008), *aff'd*, 322 Fed. Appx. 489 (9th Cir. 2009); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). Plaintiff has adequately pleaded materiality by alleging that he would have acted differently by not purchasing the computer as ordered had he known about the insufficiency of the included PSU. TAC ¶ 54.

### 3. HP's Knowledge of Defect

To state a fraudulent omission or concealment claim Plaintiff must also "sufficiently allege that a defendant was aware of a defect at the time of sale." *Wilson*, 668 F.3d at 1145. "[T]he failure to disclose a fact that a manufacturer does not have a duty to disclose, i.e., a defect of which it is not aware, does not constitute an unfair or fraudulent practice [under the UCL]." *Id*. at 1146 n.5. As this Court noted in *Kowalsky v. Hewlett–Packard Co.*, No. 10-2176, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011), while "the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge, intent, or other conditions of a person's mind, . . . [t]his does not mean . . . that conclusory allegations of knowledge or intent suffice." (internal quotation marks and citations omitted). Rather, to successfully allege that a manufacturer was aware of a defect, Plaintiff must still present a plausible basis for the Court to infer Defendant's alleged knowledge. *See Wilson*, 668 F.3d at 1146.

In the SAC, Plaintiff's factual allegations were insufficient to support his allegation that HP knew of the PSU inadequacies at the time of sale for several reasons. *See* Second Order at 22. First, the SAC cited manufacturer recommendations of the minimum wattage PSU required for particular graphics cards, but Plaintiff did not allege that HP knew of these manufacturer recommendations at the time of sale. *Id*. at 21. Second, the Court found that allegations that HP maintained a troubleshooting site containing information on "Troubleshooting Power Supply Issues" did not suffice to establish that HP knew that the specific customizable computers at issue in this case lacked sufficient PSUs when Plaintiff purchased his computer. *Id*. Finally, the Court declined to impute knowledge to HP on the basis of comments made by one HP customer to another regarding the supposed insufficiency of Slimline PCs for gaming in an HP online forum. *Id*. at 21–22.

12

United States District Court

1    In the TAC, Plaintiff now pleads sufficient facts in support of his fraudulent omission

2  claims to raise a plausible inference that HP knew, or by the exercise of reasonable care should

3  have known, that the PSUs included in computers sold to Plaintiff and class members were

4  inadequate. Plaintiff alleges that HP, as a computer manufacturer, knew that a PSU is "the single

5  most important component" in a computer, and more specifically knew of the "need to install an

6  adequate power supply in a computer to support the components." TAC ¶¶ 28–29. In addition,

7  Plaintiff now alleges that when Defendant purchased component parts from manufacturers for use

8  in its computers, Defendant was provided "specifications, recommended installations, and

9  configurations of all the component parts," and was in possession of this information at the time

10  Plaintiff and class members purchased computers from HP. TAC ¶ 28. Next, Plaintiff alleges that

11  HP demonstrated this knowledge by preventing "customers from selecting custom components that

12  exceed the capacity of the selected power supply" when purchasing different computer models,

13  such as those in the Pavilion HPE series. TAC ¶ 29. Finally, Plaintiff alleges that beyond customer

14  complaints about PSU deficiency posted to HP-hosted online fora, HP received numerous customer

15  complaints and warranty service requests regarding the defective PSUs. TAC ¶ 31.

16    HP contends that Plaintiff still pleads only "conclusory allegations of knowledge,"

17  insufficient to meet the heightened requirements of Rule 9(b). Mot. at 10. First, Defendant argues

18  that Plaintiff fails to allege the contents of the specifications and recommendations provided to HP

19  by component manufacturers.[7] Mot. at 9–10. But Plaintiff need not plead the "who, what, when,

20  where, and how" as to the content of the specifications and recommendations "because these

21  allegations go to HP's knowledge of the defect," the inadequate PSU, "and therefore need only be

22  alleged generally." Fed. R. Civ. P. 9(b); *Kowalsky*, 2011 WL 3501715, at *4. Plaintiff pleads the

23  relevant details, including the recommended wattage for the particular graphics card upgrade he

24

25

---

[7] In its Motion to Dismiss, Defendant also asserts that Plaintiff fails to allege "in what way HP's
26  computers did not meet the [recommended] minimum" capacity. Mot. At 10. However, the TAC
does in fact allege that AMD, the manufacturer of the upgraded graphics card selected by Plaintiff,
27  recommends, at a minimum, a PSU approximately 36% more powerful (300W) than that included
in the computer purchased by Plaintiff (220W). TAC ¶ 35.

28
13

United States District Court

chose (300W), the wattage of the PSU installed in the computer he purchased (220W), and recommendations for several different upgrade options, which is all that is required.[8] TAC ¶ 20.

Defendant next argues that Plaintiff alleges nothing to show HP knew computers purchased by Plaintiff and class members would malfunction "merely because the power supply was below some generalized set of 'recommendations.'" Mot. at 10. To survive a motion to dismiss, however, Plaintiff need not allege that the computers suffer from erratic and decreased performance "merely because" the capacities of the included PSUs fell short of HP's component suppliers' recommendations. Plaintiff need only plead sufficient facts to raise a plausible inference that HP knew, or by the exercise of reasonable care should have known, that the PSUs included in computers sold to Plaintiff and class members were inadequate, and this inadequacy led to the performance and safety issues Plaintiff identifies. The component supplier recommendations and specifications form part of the factual basis supporting Plaintiff's allegations that HP was aware that upgraded graphics cards and other components require more power, and more powerful PSUs. In its Reply, Defendant notes that Plaintiff has taken discovery of "the specification sheets regarding the actual, measured power demands of the components in Plaintiff's computer." Reply at 5. Defendant contends that because Plaintiff does not allege the total wattage requirements of all the components in his computer, he has not "allege[d] facts demonstrating that the actual power requirements of his computer exceeded the capabilities of the 220 Watt power supply." *Id.* In ruling on a motion to dismiss, however, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. The discovery to which Defendant points is not properly before the Court in

---

[8] Furthermore, "the requirements of Rule 9(b) may be 'relaxed as to matters peculiarly within the opposing party's knowledge,' if the plaintiffs cannot be expected to have personal knowledge of the facts prior to discovery." *In re Gupta Corp. Sec. Lit.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994) (quoting *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)); *accord Maraldo v. Life Ins. Co. of the Sw.*, No. 11-4972, 2012 WL 3204181, at *2 (N.D. Cal. Aug. 3, 2012); *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 10-02630, 2011 WL 1497096, at *6 (E.D. Cal. Apr. 19, 2011). Here, the precise contents of the documentation provided to HP by its component suppliers is "peculiarly" within HP's knowledge, and not something about which Plaintiff can be expected to have personal knowledge at the pleading stage.

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1    considering a motion to dismiss, though such discovery may be relevant at later stages of the

2    litigation.

3           Defendant cites *Brooks v. Gomez* as support for its contention that Plaintiff pleads only

4    conclusory allegations about HP's knowledge of the defective PSUs. No. 10-1873, 2013 WL

5    496339 (N.D. Cal. Feb 7, 2013). In *Brooks*, the court found that the plaintiff had alleged no facts

6    supporting their contention that the company with which defendants transacted was

7    "untrustworthy," an allegation which formed the basis for the plaintiff's fraud claim. *Id.* at *7. The

8    plaintiffs in *Brooks* alleged only that the supposedly untrustworthy company "had already been

9    found to be unlawfully making trades without a license, and [defendants] knew or should have

10   known of such unlawful activities" without alleging any particular facts to support this contention.

11   *Id.* at *7 (internal citations omitted). The *Brooks* court held that these conclusory assertions were

12   "'devoid of further factual enhancement,' and, without more, [were] insufficient to withstand a

13   motion to dismiss." *Id.* at *7 (citing *Iqbal*, 556 U.S. at 678).

14          Here, unlike the plaintiff in *Brooks*, Plaintiff pleads sufficient facts to support his allegation

15   that HP was aware it sold computers with inadequate PSUs to Plaintiff and putative class members.

16   As discussed above, Plaintiff alleges that: (1) HP received documentation regarding minimum

17   recommended PSU capacity from component manufacturers; (2) HP demonstrated its awareness of

18   the importance of an adequately powerful PSU by preventing purchasers of other computer models

19   from selecting components that exceeded the capacity of the included CPU; (3) HP maintained an

20   informational webpage that notified customers performing post-purchase component upgrades of

21   the importance of also upgrading the PSU if more powerful components were installed; and (4) HP

22   received numerous customer complaints and warranty service requests that provided Defendant

23   knowledge of the relevant defect, inadequate PSUs.[9] TAC ¶ 28–31. The Court finds that, taken

---

24   [9] Standing alone, customer complaints, especially when alleged anecdotally, are insufficient to
25   support allegations of exclusive knowledge of a defect. *See Oestreicher*, 544 F. Supp. 2d at 974 n.9
     ("Random anecdotal examples of disgruntled customers posting their views on websites at an
26   unknown time is not enough to impute knowledge upon defendants. There are no allegations that
     Alienware knew of the customer complaints at the time plaintiff bought his computer."); *see also*
27   *Baba*, 2011 WL 317650, at *3 (finding that "[plaintiff's] allegations of a few complaints on the
     Internet [were] insufficient to support his claim that HP engaged in corporate fraud by making
28

15

United States District Court

together, accepted as true, and construed in the light most favorable to Plaintiff, these allegations raise the plausible inference that HP knew the PSUs installed in computers sold to Plaintiff and class members were unable to adequately power the included components.

### 4.    Exclusive Knowledge

An actionable omission may arise "when the defendant had exclusive knowledge of material facts not known to plaintiff." *Judkins*, 52 Cal. App. 4th at 337. As discussed above, Plaintiff has alleged sufficient facts to support the plausible inference that Defendant was aware that the PSUs at issue were inadequate to power the computers in which they were installed, and that this information was material. In its Motion to Dismiss, Defendant contends that Plaintiff fails to plead *exclusive* knowledge. Mot. at 11–12. Defendant's principal argument is that Plaintiff cannot plead exclusive knowledge because the component manufacturers' recommendations about minimum PSU capacity were publicly available on the internet. Mot. at 11–12. Defendant argues that, like "the driver of a car with a defective ambient temperature gauge who can put his hand outside the window to determine what the weather is like," Plaintiff could have discovered component manufacturers' PSU recommendations and compared them to the computer he was configuring on HP's website. *Id*. at 13 (quoting *Donohue*, 871 F. Supp. 2d at 926).

Defendant's analogy fails, however, because customers cannot "be expected to seek facts which they h[ave] no way of knowing exist[]." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Products Liab. Litig.*, 754 F. Supp. 2d 1208, 1227–28 (C.D. Cal. 2010). "A defendant has exclusive knowledge giving rise to a duty to disclose when 'according to the

---

misrepresentations and omissions regarding a known defect"). This does not mean that such complaints are irrelevant, however. Such complaints combined with other factual allegations can establish a defendant's knowledge of a product defect. *See, e.g., In re Sony Vaio Computer Notebook Trackpad Litig.*, No. 09-2109, 2010 WL 4262191, at *5 (S.D. Cal. Oct. 28, 2010) (holding plaintiff sufficiently alleged knowledge of defect by alleging defendant's receipt of numerous customer complaints); *Mui Ho*, 2013 WL 1087846, at *8 (finding plaintiff sufficiently alleged exclusive knowledge based on defendant's possession of non-public data about the defect, such as testing data, consumer complaints, repair orders, and testing in response to the complaints); *Decker*, 2011 WL 5101705, at *5 (finding sufficient to establish exclusive knowledge allegations that defendant possessed "pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem").

16

complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover.'" *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (quoting *Collins*, 202 Cal. App. 4th at 256); *see also Marsikian v. Mercedes Benz USA, LLC*, No. 08-04876, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009) (finding allegations showing defendant "was in a superior position to know" of an alleged defect "plainly sufficient"); *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012) (noting that courts look to "whether the defendant had 'superior' knowledge of the defect" and do not rigidly require literal exclusivity).

Here, Plaintiff had no reason to seek out information regarding PSU capacity, or to question whether the PSU that HP included in Plaintiff's computer was sufficient to power upgraded components of the computer. Plaintiff alleges he was not aware that the power supply was inadequate to support upgraded components when he purchased the computer. TAC ¶ 53–54. HP provides no basis to conclude that when purchasing a brand new computer from HP's website, Plaintiff should have considered whether the upgrades HP offered and encouraged him to buy could be properly powered by the included, non-customizable PSU in his HP computer. Nor is there any reason to think that many customers, including Plaintiff, would be aware that information like PSU capacity recommendations exists, let alone is available on the internet. Plaintiff here more closely resembles the cell phone purchaser in *Donahue v. Apple*, who had "no way to ascertain the 'true' strength of his network connection and decide that his signal meter [was] inaccurate" and therefore was not expected to have sought out that information. 871 F. Supp. 2d at 926.

The Court finds that Plaintiff's allegations in the TAC support his claim that Defendant had exclusive knowledge of the PSU issue such that a failure to disclose it would be actionable under both the CLRA and the fraud prong of the UCL.

### 5. Active Concealment

To state a claim for active concealment under the CLRA and UCL fraud prong, and to state a claim for common law fraud, Plaintiff must plead that Defendant: (1) concealed or suppressed a material fact; (2) was under a duty to disclose the fact to the plaintiff; (3) intentionally concealed or

United States District Court

suppressed the fact with the intent to defraud Plaintiff; and that Plaintiff (4) was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) sustained damage as a result of the concealment or suppression of the fact. *Falk*, 496 F. Supp. 2d at 1097 (citing *Lovejoy*, 119 Cal. App. 4th at 157); *Lazar*, 12 Cal. 4th at 638 (listing elements of common law fraud). As with exclusive knowledge, Plaintiff must plead more than generalized allegations. *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *3 (N.D. Cal. Dec. 17, 2009).

The Court concludes that Plaintiff adequately pleads facts satisfying four of the five elements. As discussed above, Plaintiff has pleaded sufficient facts to support his allegations that the recommended PSU capacity information was a material fact that HP concealed from Plaintiff and class members, and a fact that HP had a duty to disclose, the first and second elements. Plaintiff further alleges that he was unaware that the computer he purchased was inadequately powered, and that had he known otherwise, he would not have purchased the computer as ordered, thereby adequately pleading the fourth element. TAC ¶¶ 4, 27, 54. Finally, Plaintiff alleges in the TAC that his computer both suffered from operational problems such as hangs, freezes, reboots, and display abnormalities during the first year of operation and subsequently malfunctioned and became completely unusable, thereby pleading the fifth element. TAC ¶¶ 19, 36. The disputed issue, then, concerns the third element. The Court must inquire whether Plaintiff has pleaded sufficient facts supporting his allegation that HP intentionally concealed or suppressed information regarding PSU capacity with the intent to defraud Plaintiff.[10] *See* Mot. at 12.

A fraudulent omission claim based on active concealment requires that Plaintiff allege specific "affirmative acts on the part of the defendants in hiding, concealing or covering up the matters complained of." *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963); *see also Herron*, 924 F. Supp. 2d at 1176. This requires more than just "facts showing that the defendant knew of

---

[10] The Court previously dismissed Plaintiff's active concealment claim because Plaintiff had failed to sufficiently allege knowledge, without which Plaintiff could not plausibly allege "intentional" concealment. Second Order at 22. As discussed above in Part III.A.3, Plaintiff has remedied this defect with new allegations in the TAC. Therefore the Court must address whether Plaintiff has adequately pleaded intent.

the alleged defect and did nothing to fix it or alert customers to its existence." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1135 (N.D. Cal. 2010); *Herron*, 924 F. Supp. 2d at 1176 (noting that because "[mere] nondisclosure does not constitute active concealment," courts require that such allegations be supplemented with allegations of affirmative conduct).

Defendant contends Plaintiff has not shown in the TAC that HP "actively" concealed material information from consumers.[11] Mot. at 13. Defendant notes that HP informed Plaintiff of the computer's specifications, including the wattage of the PSU, and that Plaintiff knew the brand and model of each of the upgraded components he selected. *Id*. Simply failing to disclose the component manufacturers' recommendations, Defendant asserts, is "mere nondisclosure," which "'does not constitute active concealment.'" Mot. at 14 (quoting *Herron*, 924 F. Supp. 2d at 1176).

However, other courts have found allegations similar to those alleged here to be sufficient to survive a motion to dismiss. In *Tietsworth*, for example, the plaintiff adequately pleaded active concealment by alleging nondisclosure of a known defect in combination with affirmative denials of the defect and denials of free servicing or repairs of the defective parts. 720 F. Supp. 2d at 1135. Similarly, in *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010), the court found that plaintiff adequately alleged active concealment of a windshield defect by alleging, in addition to nondisclosure, that defendant: (1) "replaced defective windshields only for the most vocal customers without disclosing the replacement program to all consumers and concealing the program by calling the replacements 'goodwill' adjustments" and (2) used a test to determine qualification for replacement despite knowing that "the test frequently produced false positive results."  Moreover, in *Apodaca v. Whirlpool Corp.*, No. 13-725, 2013 WL 6477821 (C.D. Cal. Nov. 8, 2013), the court held that nondisclosure, combined with "allegations that Defendant denied the defect when Plaintiffs called to request repairs or replacement dishwashers . . . [was] sufficient to allege active concealment." Furthermore, in *Stanwood v. Mary Kay*, 941 F. Supp. 2d 1212, 1221

---

[11] Defendant also argues that HP could not have concealed what was publicly available on the internet. Mot. at 12–13. Like with the exclusive knowledge prong, however, the mere possibility that Plaintiff could have discovered the allegedly concealed information is insufficient to defeat a charge of concealment, and Defendant cites no authority supporting its arguments to the contrary.

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

United States District Court

United States District Court

1   (C.D. Cal. 2012), the court found that the plaintiff had adequately pleaded active concealment by

2   alleging, in addition to nondisclosure, materiality, reliance, and damages, that "Mary Kay

3   concealed the information in order to increase its sales from consumers like Ms. Stanwood."

4   Finally, the court in *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d at 999, held the plaintiff had

5   sufficiently alleged active concealment "by citing to multiple other consumers' similar complaints,

6   as well as Defendants' decisions to repair Class Vehicles' headlamps only temporarily, or to

7   replace them with other defective parts."

8          Plaintiff's allegations here bear substantial similarity to these cases. Specifically, as in *Mui*

9   *Ho*, *Tietsworth*, and *Ehrlich*, Plaintiff here alleges that HP "had received numerous complaints

10  directly from its consumers," and that HP also had notice of the defective PSU by virtue of

11  warranty service requests and forum posts. TAC ¶ 31. Nevertheless, Plaintiff alleges that HP would

12  not repair or replace Plaintiff's computer. TAC ¶ 36. More importantly, even though HP had

13  knowledge of the underpowered PSU from the customer complaints, manufacturer

14  recommendations, warranty service requests and forum posts, HP nevertheless maintained a "help

15  me choose"  interface that directs customers to particular computer models based on particular

16  expected computing needs. TAC ¶ 23. Through HP's "help me choose" interface, Plaintiff alleges

17  that HP actively directed customers to, and encouraged them to buy, higher-cost, high performance

18  components that HP knew would require more powerful PSUs. TAC ¶ 23; *see also* Opp'n at 15.

19  Despite recommending these higher-cost, high performance components, HP's "help me choose"

20  interface did not suggest or recommend an upgrade of the PSU to support the higher-cost, high

21  performance components. TAC ¶ 23. Further, as in *Stanwood*, Plaintiff here alleges that HP

22  concealed the manufacturer's recommendations that more powerful PSUs be used with upgraded

23  graphics cards and other components to increase HP's sales from customers like Plaintiff, who

24  would otherwise not have upgraded his computer to higher-cost components. TAC ¶ 30 ("HP

25  suppressed these facts from customers to encourage them to purchase the computers and pay a

26  premium for the "upgraded" components even though those components would not function

27  properly in the Slimline and Pavilion computers."). Finally, Plaintiff contends that if customers

28

20

United States District Court

1   dismissed the effects of the underpowered PSUs as typical computer issues or otherwise not

2   connected to the PSU, these customers might never seek warranty service or repairs, and HP could

3   effectively shift the costs of repairing or upgrading the PSUs to purchasers. *See* Opp'n at 15. In the

4   alternative, as in Plaintiff's case, the issue might not be discovered until after the warranty expired.

5   Plaintiff did not learn his issues stemmed from an inadequate PSU until 17 months after purchase

6   (five months after his warranty expired), and "Plaintiff contacted Defendant for assistance, but it

7   would not replace the computer or even agree to repair it." TAC ¶ 36.

8          The Court notes that at the motion to dismiss stage, it must defer to the allegations pleaded

9   in the TAC. Taken as true and viewed together, Plaintiff's allegations are sufficient to raise the

10   plausible inference that HP actively concealed the fact that the PSUs in computers it sold to

11   Plaintiff and class members were insufficiently powerful, and that HP's motivation in concealing

12   this fact was to defraud purchasers and increase HP's sales. The Court's conclusion should not be

13   read to suggest that Plaintiff's active concealment claim could survive in later stages of the

14   litigation. Rather, at this stage, the Court's review is confined solely to the pleadings. The Court

15   further notes that its decision to allow the active concealment claim to proceed should not

16   significantly expand the scope of discovery. The discovery relevant to active concealment will

17   largely be the same as the discovery for the other claims that the Court has allowed to proceed.

18   Therefore, the Court's decision here with respect to active concealment is narrow and has limited

19   implications.

20          Because the Court finds that, at the motion to dismiss phase, Plaintiff's allegations are

21   sufficient to raise the plausible inference that HP intentionally concealed the PSU issue from

22   customers with the intent to defraud them, the Court concludes that Plaintiff's claims premised on

23   fraudulent concealment under the CLRA and UCL fraud prong on the basis of an active

24   concealment, as well as for common law fraud claim, survive the instant Motion to Dismiss.

25   Likewise, as explained in the previous section, the Court also finds Plaintiff has adequately pleaded

26   a claim of fraudulent concealment or omission based on Defendant's exclusive knowledge of the

27

28

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1    underpowered PSUs. Defendant's Motion to Dismiss Plaintiff's CLRA, UCL fraud prong, and

2    common law fraud claims is therefore DENIED.

### B.    Additional UCL Claim

4        In the TAC, Plaintiff also alleges violation of the unlawful prong of the UCL. The unlawful

5    prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which

6    the UCL then "makes independently actionable." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180

7    (internal quotation marks and citations omitted). Plaintiff borrows Defendant's alleged violations

8    of the CLRA and the Song–Beverly Act to support his theory of liability under the unlawful

9    prong.[12] Because the Court finds that Plaintiff has successfully alleged violations of both the

10   CLRA and (previously) the Song–Beverly Act, Plaintiff also adequately alleges a claim under the

11   UCL's unlawful prong. *See* Second Order at 10. Accordingly, Plaintiff may proceed on his claim

12   under the unlawful prong of the UCL.

## IV.    CONCLUSION

14       For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss. Because

15   Plaintiff has alleged sufficient additional facts in the TAC to support a plausible inference that HP

16   had knowledge of the alleged defective PSUs, and Plaintiff has adequately alleged active

17   concealment and exclusive knowledge, this Court DENIES HP's Motion to Dismiss Plaintiff's

18   claims for violations of the CLRA, the fraud prong of the UCL, and for common law fraud.

19   Because Plaintiff has adequately pleaded claims under the CLRA and, previously, the Song–

---

[12] In the Second Order, the Court found that because Plaintiff had not plausibly alleged any statutory violations, Plaintiff failed to allege violation of the unlawful prong of the UCL. Second Order at 24. The Court now recognizes, however, that Plaintiff had at that time sufficiently pleaded a violation of the Song–Beverly Act. Although breach of *express* warranty "is not itself an unlawful act for purposes of the UCL," *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) ("Contractual duties are voluntarily undertaken by the parties to the contract, not imposed by state or federal law."), the implied warranty provided by the Song–Beverly Act is statutory, not contractual, and accordingly courts have held that violation of the Song–Beverly Act can be the basis for a claim under the UCL's unlawful prong. *See, e.g., Tietsworth*, 720 F. Supp. 2d at 1136 (N.D. Cal. 2010) (finding plaintiff stated claim for violation of unlawful prong of the UCL by alleging a violation of the Song–Beverly Act); *Keegan*, 838 F. Supp. 2d at 944 n.50 (holding that because plaintiffs had successfully alleged violation of, *inter alia*, the Song–Beverly Act, plaintiffs had also successfully stated a claim under the unlawful prong of the UCL).

22

United States District Court

United States District Court

1  Beverly Act, Plaintiff sufficiently alleged a claim under the unlawful prong of the UCL.

2  Accordingly, as a result of this order and the Second Order, Plaintiff may proceed on the following

3  causes of action: (1) the CLRA, the UCL fraud prong, and common law, for fraudulent omissions

4  regarding insufficiently powerful PSUs that led to malfunctions that manifested during the

5  warranty period; (2) breach of express warranty; (3) breach of implied warranty under the Song–

6  Beverly Act; and (4) unlawful conduct under the UCL, predicated on violations of the CLRA and

7  the Song–Beverly Act.

8  **IT IS SO ORDERED.**

9

10  Dated: February 5, 2014

10  _Lucy H. Koh_
_____

11  LUCY H. KOH
United States District Judge

Case No.: 12-CV-00421-LHK
ORDER DENYING MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT